UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CASHEDGE, INC, <br><br> Plaintiff <br><br> v. <br><br> YODLEE, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C. A. No. <br> ) <br> ) <br> ) <br> ) JURY TRIAL DEMANDED <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff CashEdge, Inc. ("CashEdge"), by and through its attorneys, alleges as and for its complaint against Defendant Yodlee, Inc. ("Yodlee") as follows:

### THE PARTIES

1. CashEdge is a corporation organized and existing under the laws of the State of Delaware having its principal place of business at 104 Fifth Avenue, New York, NY 10011.

2. Upon information and belief, Yodlee is a corporation organized and existing under the laws of the State of Delaware having its principal place of business at 3600 Bridge Parkway, Suite 200, Redwood City, CA 94065-1170.

### JURISDICTION AND VENUE

3. This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code. This Court has jurisdiction over the causes of action stated herein pursuant to 35. U.S.C. § 101 et seq. and 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Yodlee because it is incorporated in the state of Delaware.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b).

### THE PATENT

6. CashEdge is the owner of all right, title, and interest in and to United States Patent No. 7,013,310 (the "'310 patent"), entitled Method And Apparatus For Retrieving And Processing Data, which was duly and legally issued by the United States Patent and Trademark Office on March 14, 2006. A copy of the '310 patent is attached hereto as Exhibit A.

### COUNT ONE: PATENT INFRINGEMENT

7. Plaintiff CashEdge re-alleges and incorporates by reference Paragraphs 1-6 of this Complaint as if fully set forth herein.

8. Yodlee has infringed and continues to infringe one or more claims of the '310 patent by making, using, offering for sale, and selling in the United States data aggregation products, services, solutions, applications and techniques which utilize methods and apparatus for retrieving and processing data that embody the claimed inventions of the '310 patent, including but not limited to Yodlee's OnCenter and Funds Transfer for Personal Financial Management, BillDirect and CardDirect for Electronic Bill Payment & Presentment, AdvisorView for Wealth Management, Instant Account Verification for Risk Management, and InsideView for Market Research.

9. Yodlee has induced and continues to induce others to infringe, and/or has committed and continues to commit acts of contributory infringement of one or more claims of the '310 patent.

10. On information and belief, Yodlee has had and continues to have knowledge of the '310 patent.

11. As a result of Yodlee's infringement, CashEdge has suffered and continues to suffer monetary damages in an amount yet to be determined because of the above-described acts of infringement of the '310 patent and will continue to suffer damages in the future unless Yodlee's infringing activities are enjoined by this Court.

12. CashEdge is entitled to damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the infringement of the '310 patent.

13. Unless infringement of the '310 patent by Yodlee, its agents, servants, employees, attorneys, representatives, and all others acting on its behalf is preliminarily and permanently enjoined, CashEdge will be greatly and irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, CashEdge respectfully requests for judgement against Yodlee as follows:

(a) That Yodlee has infringed the '310 patent;

(b) Awarding CashEdge damages for Yodlee's infringement;

(c) Preliminarily and permanently enjoining Yodlee, its agents, servants, employees, attorneys, representatives, and all others acting on its behalf and all those persons in active concert or participation with it from infringing the '310 patent;

(d) Declaring this an exceptional case under 35 U.S.C. § 285 and awarding CashEdge its costs, expenses and attorneys fees in this action; and

(e) Awarding CashEdge such further relief as this Court may deem proper.

## JURY DEMAND

CashEdge hereby demands a trial by jury of all issues in this action.

Dated: March 14, 2006

CONNOLLY BOVE LODGE & HUTZ LLP

*/s/ Arthur G. Connolly, III*
Arthur G. Connolly, III (No. 2667)
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19899-2207
(302) 658-9141

Attorneys for Plaintiff

OF COUNSEL:

Drew M. Wintringham, III
Mark W. Rueh
CLIFFORD CHANCE
ROGERS & WELLS LLP
31 West 52nd Street
New York, New York 10019
(212) 878-8000

4

# EXHIBIT A

United States Patent: 7,013,310            Page 1 of 12



( 1 of 1 )

| | |
|---|---|
| **United States Patent** | **7,013,310** |
| Messing , et al. | **March 14, 2006** |

Method and apparatus for retrieving and processing data

### Abstract

Data is captured from a web site or other data source. Data is extracted from the web page using a data harvesting script or other data acquisition routine. The extracted data is then normalized and stored in a database. If data cannot be extracted from the web page, a copy of the captured web page is stored without personal information contained in the web page. The data harvesting script is then edited based on an analysis of the captured web page.

| | |
|---|---|
| Inventors: | **Messing; Roy** (Ridgefield, CT); **Sokolic; Jeremy N.** (New York, NY); **Dheer; Sanjeev** (Scarsdale, NY); **Dilip; Venkatachari** (Cupertino, CA) |
| Assignee: | **CashEdge, Inc.** (New York, NY) |
| Appl. No.: | 040314 |
| Filed: | **January 3, 2002** |

| | |
|---|---|
| **Current U.S. Class:** | **707/104.1**; 707/102; 707/101; 707/103.R |
| **Current Intern'l Class:** | G06F 17/00 (20060101) |
| **Field of Search:** | 707/1041,102,103.R,3,10 709/225,228,230 382/115 379/671 715/523 |

### References Cited [Referenced By]

**U.S. Patent Documents**

| | | |
|---|---|---|
| 5805719 | Sep., 1998 | Pare, Jr. et al. |
| 5855020 | Dec., 1998 | Kirsch. |
| 5895838 | Apr., 1999 | Harjunmaa et al. |
| 6038603 | Mar., 2000 | Joseph. |
| 6381592 | Apr., 2002 | Reuning. |
| 6609128 | Aug., 2003 | Underwood. |
| 6697860 | Feb., 2004 | Kung. |
| 6792082 | Sep., 2004 | Levine. |

United States Patent: 7,013,310                                                                 Page 2 of 12

*Primary Examiner:* Kindred; Alford
*Assistant Examiner:* Al-Hashemi; Sana
*Attorney, Agent or Firm:* Lee & Hayes, PLLC

---
*Claims*
---

What is claimed is:

1. A method comprising:

capturing a web page from a web site; comprising:

extracting data from the web page using a data harvesting script;

normalizing the extracted data with data extracted from other web pages;

generating a context-specific error code if the data harvesting script fails to successfully extract data from the web page;

adapting the data harvesting script based on identified changes to the web page; and

storing the normalized data in a database.

2. A method as recited in claim 1 wherein the web site is associated with a financial institution.

3. A method as recited in claim 2 wherein the captured web page contains information regarding a customer's account at the financial institution.

4. A method as recited in claim 1 wherein the web page is an HTML screen.

5. A method as recited in claim 1 further comprising:

capturing a second web page from a second web site;

extracting data from the second web page using the data harvesting script;

normalizing the data extracted from the second web page with data extracted from other web pages;

generating a context-specific error code if the data harvesting script fails to sucessfully extract data from the second web page;

adapting the data harvesting script based on identified changes to the web page; and

storing the normalized data from the second web page in the database.

6. A method as recited in claim 1 wherein the context-specific error code identifies a type of change necessary to the data harvesting script to properly extract data from the web page.

7. A method as recited in claim 1 further comprising storing a copy of the captured web page if data cannot be extracted from the web page using the data harvesting script.

8. One or more computer-readable memories containing a computer program that is executable by a processor

United States Patent: 7,013,310                                                                 Page 3 of 12

to perform the method recited in claim 1.

9. A method comprising:

retrieving financial data associated with a user's financial account from a data source;

identifying data of interest retrieved from the data source;

generating a context-sensitive error code if the data of interest is not successflly retrieved from the data source, wherein the context-sensitive error code is used to modify the manner in which data is retrieved from the data source;

normalizing the identified data; and

storing the normalized data in a database.

10. A method as recited in claim 9 further comprising:

retrieving financial data associated with a user from a second data source;

normalizing the data retrieved from the second data source; and

storing the normalized data in the database.

11. One or more computer-readable memories containing a computer program that is executable by a processor to perform the method recited in claim 9.

12. A method comprising:

capturing a web page from a web site;

attempting to extract data from the web page using a data harvesting script;

if data cannot be extracted from the web page;

removing pre-determined personal information from the captured web page;

storing the captured web page without the personal information;

analyzing the web page and the data harvesting script to determine why data could not be extracted from the web page; and

adapting the data harvesting script based on the determination why data could not be extracted from the web page.

13. A method as recited in claim 12 further comprising editing the data harvesting script based on an analysis of the captured web page, wherein the edited data harvesting script successfully extracts data from the web page.

14. A method as recited in claim 12 further comprising:

editing the data harvesting script based on an analysis of the captured web page;

capturing a new version of the web page from the web site; and

extracting data from the web page using the edited data harvesting script.

15. A method as recited in claim 14 further comprising:

normalizing the data extracted from the web page; and

storing the normalized data in a database.

16. One or more computer-readable memories containing a computer program that is executable by a processor to perform the method recited in claim 12.

17. A method comprising:

capturing a first web page from a first financial institution web site;

capturing a second web page from a second financial institution web site;

extracting data from the first web page using a first data harvesting script;

extracting data from the second web page using a second data harvesting script;

normalizing the data extracted from the first web page and the second web page;

generating a context-specific error code if the first data harvesting script fails to successfully extract data from the first web page; and

storing the normalized data in a database.

18. A method as recited in claim 17 further comprising generating an error message if data cannot be extracted from the first web page or the second web page.

19. One or more computer-readable memories containing a computer program that is executable by a processor to perform the method recited in claim 17.

20. A method as recited in claim 17 wherein capturing a first web page includes capturing a first set of web pages.

21. A method as recited in claim 17 wherein capturing a second web page includes capturing a second set of web pages.

22. An apparatus comprising:

a data capture module configured to capture a first web page from a first web site associated with a first financial institution and further configured to capture a second web page from a second web site associated with a second financial institution;

a personal information filter module coupled to the data capture module configured to remove personal information from one or more web pages, wherein the personal information filter module generates a specific error code if the personal information filter module is not able to identify personal information on a particular web page;

a data extraction module coupled to the data capture module and configured to extract data from the first and second web pages using a data harvesting script, the data extraction module further configured to normalize the data extracted from the first and second web pages, and wherein the data extraction module is adaptable based

on changes to web pages that occur over time; and

a database control module coupled to the data extraction module and configured to store the normalized data in a common database.

23. An apparatus as recited in claim 22 wherein the data capture module is further configured to retrieve financial data associated with a user's account from a data source.

24. An apparatus as recited in claim 22 wherein the data extraction module is further configured to generate an error message if data cannot be extracted from the web page using the data harvesting script.

25. One or more computer readable media having stored thereon a plurality of instructions that, when executed by one or more processors, cause the one or more processors to:

capture a web page from a financial institution web site;

attempt to extract data from the captured web page using a data harvesting script;

remove personal information from the captured web page;

store the captured web page without the personal information; and

if data cannot be extracted from the web page, generate a context-specific error code and analyze the web page to determine why data could not be extracted from the web page.

26. One or more computer readable media as recited in claim 25, wherein if data cannot be extracted from the web page, the one or more processors further edit the data harvesting script based on an analysis of the captured web page and the context-specific error code.

27. One or more computer readable media as recited in claim 25, wherein the one or more processors further:

normalize the data extracted from the web page; and

store the normalized data in a database, wherein the database contains data extracted from other web pages.

28. A method as recited in claim 12 wherein the personal information includes at least one of: a social security number, an account number, or an account holder's name.

29. A method as recited in claim 22 wherein the personal information includes at least one of: a social security number, an account number, or an account holder's name.

*Description*

TECHNICAL FIELD

The present invention relates to the retrieval and processing of data collected from web pages and/or other data sources.

BACKGROUND

Individuals, businesses, and other organizations typically maintain one or more financial accounts at one or more financial institutions. Financial institutions include, for example, banks, savings and loans, credit unions,

mortgage companies, lending companies, and stock brokers. A customer's financial accounts may include asset accounts (such as savings accounts, checking accounts, certificates of deposit (CDs), mutual funds, bonds, and equities) and debt accounts (such as credit card accounts, mortgage accounts, home equity loans, overdraft protection, and other types of loans).

Many financial institutions allow customers to access information regarding their accounts via the Internet or other remote connection mechanism (often referred to as "online banking"). Typically, the customer navigates, using a web browser application, to a web site maintained by the financial institution. The web site allows the customer to login by entering a user identification and an associated password. If the financial institution accepts the user identification and password, the customer is permitted to access information (e.g., account holdings and account balances) regarding the financial accounts maintained at that financial institution.

Similarly, other organizations and institutions allow customer access to other types of accounts, such as email accounts, award (or reward) accounts, online bill payment accounts, etc. A user may navigate a web site or other information source to receive status information regarding one or more of their accounts.

Certain application programs are able to extract data from web pages based on a previously defined layout of information on the web pages. For example, an account balance may be positioned in a particular location of a specific web page. The application program extracts the account balance data from that particular location to obtain a customer's current account balance. However, if the layout of the web page is modified, the previously defined layout of information on the web page is not accurate and the application program cannot properly extract the desired data from the web page.

The systems and methods described herein addresses these and other problems by providing a mechanism for updating the manner in which data is extracted from web pages when a web page layout is changed.

SUMMARY

The systems and methods described herein automatically extract data from web pages and other data sources associated with various institutions. The data is extracted from a data source, such as a web page using a data harvesting script or other data extraction/data acquisition routine. The extracted data is stored in a database using a standard format. If the layout of data on a particular web page changes, a copy of the web page is captured and stored for future analysis when updating one or more data extraction procedures (e.g., data harvesting scripts). Personal or confidential information is deleted from the captured web page before storing the captured web page.

A particular embodiment captures a web page from an institution's web site. Data is extracted from the web page using a data harvesting script. The extracted data is then normalized and stored in a database.

In another embodiment, a web page is captured from a web site. An attempt is made to extract data from the web page using a data harvesting script. If data cannot be extracted from the web page, personal information is removed from the captured web page and the captured web page (without the personal information) is stored.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 illustrates an exemplary network environment in which various servers, computing devices, and a financial analysis system exchange data across a network, such as the Internet.

FIG. 2 is a block diagram showing exemplary components and modules of a financial analysis system.

FIGS. 3A and 3B are flow diagrams illustrating procedures for retrieving data from an HTML screen and another data source.

FIGS. 4 and 5 illustrate exemplary web pages associated with a particular financial institution.

FIG. 6 is a flow diagram illustrating a procedure for retrieving financial data and adjusting a data harvesting script if the financial data layout has changed.

FIG. 7 is a block diagram showing pertinent components of a computer in accordance with the invention.

DETAILED DESCRIPTION

The system and methods described herein are capable of automatically extracting data from web pages or other data sources associated with one or more accounts or institutions, such as financial accounts or financial institutions. A particular web page or data source may contain account information associated with a customer of a particular institution. If an error occurs when attempting to extract data from a web page, a copy of the web page is saved for future analysis in determining the cause of the error and creating a new procedure for extracting data from the web page. When saving a copy of the web page for future analysis, confidential information is removed before storing the web page, thereby reducing the possibility of inadvertently exposing confidential information contained in the web page.

As used herein, the terms "account holder", "customer", "user", and "client" are interchangeable. "Account holder" refers to any person having access to an account. A particular account may have multiple account holders (e.g., a joint checking account having husband and wife as account holders or a corporate account identifying several corporate employees as account holders).

Various financial account and financial institution examples are provided herein for purposes of explanation. However, the methods and procedures described herein can be applied to any type of transaction involving any type of account. For example, a data aggregation system may aggregate data from multiple sources, such as multiple financial accounts, multiple email accounts, multiple online award (or reward) accounts, multiple news headlines, and the like. Similarly, the data retrieval and data processing systems and methods discussed herein may be applied to collect data from any type of account containing any type of data. Thus, the methods and systems described herein can be applied to a data aggregation system or any other account management system instead of the financial analysis system discussed in the examples provided herein.

FIG. 1 illustrates an exemplary network environment **100** in which various servers, computing devices, and a financial analysis system exchange data across a network, such as the Internet. The network environment of FIG. 1 includes multiple financial institution servers **102**, **104**, and **106** coupled to a data communication network **108**, such as the Internet. Data communication network **108** may be any type of data communication network using any network topology and any communication protocol. Further, network **108** may include one or more sub-networks (not shown) which are interconnected with one another.

A client computer **110** and a financial analysis system **112** are also coupled to network **108**. Financial analysis system **112** includes a database **114** that stores various data collected and generated by the financial analysis system. Financial analysis system **112** performs various account analysis and data analysis functions, as discussed in greater detail below.

Client computer **110** and financial analysis system **112** may be any type of computing device, such as a desktop computer, a laptop computer, a palmtop computer, a personal digital assistant (PDA), a cellular phone, or a set top box. Client computer **110** communicates with one or more financial institution servers **102**-**106** to access, for example, information about the financial institution and various user accounts that have been established at the financial institution. Each of the financial institution servers **102**-**106** is typically associated with a particular financial institution and store data for that financial institution.

The communication links shown between network **108** and the various devices (**102**, **104**, **106**, **110**, and **112**) shown in FIG. 1 can use any type of communication medium and any communication protocol. For example, one or more of the communication links shown in FIG. 1 may be a wireless link (e.g., a radio frequency (RF) link or a microwave link) or a wired link accessed via a public telephone system or another communication

network.

FIG. 2 is a block diagram showing exemplary components and modules of financial analysis system **112**. A communication interface **202** allows the financial analysis system **112** to communicate with other devices, such as one or more financial institution servers. In one embodiment, communication interface **202** is a network interface to a local area network (LAN), which is coupled to another data communication network, such as the Internet.

A database control module **204** allows financial analysis system **112** to store data to database **114** and retrieve data from the database. Financial analysis system **112** also stores various financial institution data **206**, which may be used to locate and communicate with various financial institution servers. Financial institution data **206** includes, for example, account balance information, transaction descriptions, transaction amounts, and security holdings.

A variety of data harvesting scripts **208** are also maintained by financial analysis system **112**. For example, a separate data harvesting script **208** may be maintained for each financial institution from which data is extracted. Data harvesting (also referred to as "screen scraping") is a process that allows, for example, an automated script to retrieve data from one or more web pages associated with a web site. Data harvesting may also include retrieving data from a data source using any data acquisition or data retrieval procedure. Additional details regarding data harvesting and data harvesting scripts are provided below.

Financial analysis system **112** includes a data capture module **210** and a data extraction module **214**. The data capture module **210** captures data (such as web pages or OFX data) from one or more data sources. The data extraction module **214** retrieves (or extracts) data from the captured web pages or other data sources. The data extraction module **214** may use one or more data harvesting scripts **208** to retrieve data from a web page. A personal information filter module **212** removes confidential information from a web page. Thus, the majority of the content of the web page can be stored for future access without risking exposure of an account holder's confidential information.

Data capture module **210** may also retrieve data from sources other than web pages. For example, data capture module **210** can retrieve data from a source that supports the Open Financial Exchange (OFX) specification or the Quicken Interchange Format (QIF). OFX is a specification for the electronic exchange of financial data between financial institutions, businesses and consumers via the Internet. OFX supports a wide range of financial activities including consumer and business banking, consumer and business bill payment, bill presentment, and investment tracking, including stocks, bonds, mutual funds, and 401(k) account details. QIF is a specially formatted text file that allows a user to transfer Quicken transactions from one Quicken account register into another Quicken account register or to transfer Quicken transactions to or from another application that supports the QIF format.

A failure analysis module **218** in financial analysis system **212** analyzes the failure of a data harvesting script and determines why the script failed. For example, if a web page is redesigned by a financial institution, a data harvesting script that has not been updated to reflect the new web page design may not operate properly. In this situation, the information sought by the data harvesting script may have been moved to a different location on the new web page. The failure analysis module **218** assists a user in identifying the reason for the script failure. A script editing module **216** assists a user in editing a data harvesting script to function properly with a new web page design.

FIGS. 3A and 3B are flow diagrams illustrating procedures for retrieving data from an HTML screen and another data source. Specifically, FIG. 3A is a flow diagram illustrating a procedure **300** for retrieving data from an HTML screen. Initially, the procedure **300** captures an HTML (HyperText Markup Language) screen from a financial institution web site (block **302**). For example, the HTML screen may be a web page associated with the financial institution. Data is then extracted from the HTML screen using a data harvesting script (block **304**). The extracted data is then normalized (block **306**), which refers to the process of arranging the extracted data into a standard format such that data collected from a variety of different web pages is arranged (or

normalized) into the same format. The normalized data is then stored in the database (e.g., database **114** in FIG. 1) for future reference (block **308**).

The normalizing of data is useful when collecting data from multiple sources (e.g., multiple financial institutions). Each financial institution may use different terms for the same type of data. For example, one financial institution may use the term "buy" while another financial institution uses the term "purchase" for the same type of transaction. By normalizing the data, a single database can be used to store financial information related to multiple different financial institutions. Thus, various financial analysis tools and procedures can be used to analyze data across multiple financial institutions or other data sources.

As mentioned above, data harvesting (or screen scraping) is a process that allows an automated script to retrieve data from a web site and store the retrieved data in a database. The data harvesting scripts are capable of navigating web sites and capturing individual HTML pages. For example, JavaScript and images may be removed from the HTML pages or converted into HTML text if it contains account information. A parser then converts the HTML data into a field-delimited XML format. The XML data communicates with enterprise java beans (EJBs) through an XML converter. EJBs perform a series of SQL queries that populate the data into the database. The success of a particular data harvesting process is related to the layout of the web site being harvested in two important ways: 1) the data harvesting script must navigate to the correct HTML page, and 2) the parser must know which cells in the HTML tables contain specific data items.

FIG. 3B is a flow diagram illustrating a procedure **350** for retrieving and processing data from a data source (other than an HTML screen). The data source may be, for example, a financial institution or other provider of financial data. The data source may also be referred to as a "file download source" or a "data download source". The data source may communicate data using the OFX standard, the QIF format, or some other data format. The procedure **350** begins by retrieving data from a data source (block **352**). The procedure identifies data of interest from the retrieved data (block **354**). The data of interest may be, for example, data associated with a particular customer's accounts. The identified data is then normalized (block **356**) and stored in the database (block **358**). The database may contain data related to other customers and/or data collected from other sources (such as HTML screens).

FIGS. 4 and 5 illustrate exemplary web pages **400** and **500**, respectively, associated with a particular financial institution. A particular data harvesting script may look for specific text on the web page to confirm that the script has navigated to the correct site. For example, to ensure that the Vanguard screen scraping script has navigated to the "Quick Links" web page, the script looks for the phrase "Common Tasks" in row 1 of table 1 (see the portion of the web page surrounded by a ring **410**). If this phrase is found, the script can then navigate to row two and select the "Access my Accounts" link that takes the script to a secure login page (e.g., an HTTPS login page). If the script cannot locate the phrase "Common Tasks" it will generate an exception error and stop running.

Once the script has found the correct page, pattern matches are used by the parser to determine the appropriate cell from which to retrieve specific data items. For example, once the data harvesting script has navigated to the "Account Values" page (shown in FIG. **5**), the script identifies the correct row from which to retrieve data by pattern matching a combination of the fund/account number and the fund name in columns one and two. The script also matches the column header name and then moves down the column to the appropriate row in the column. In this example, the parser will populate the data field "Account Value" with the data in the cell in row one and column five. This account value information is highlighted by a ring **510** in FIG. **5**.

FIG. 6 is a flow diagram illustrating a procedure **600** for retrieving financial data and adjusting a data harvesting script if the financial data layout has changed. Initially, the procedure **600** captures a financial institution screen shot (block **602**). For example, a screen shot associated with a particular financial institution web page or web site. Next, the procedure removes personal and/or confidential information from the screen shot (block **604**). Example personal and/or confidential information that is removed includes customer name, address, telephone number, email address, and social security number.

The procedure **600** then identifies and sorts all failed updates (block **606**). A failed update may occur when a data harvesting script attempts to update a user's account information but the layout of the financial institution's web pages have changed. The procedure may search the database for all failed updates by error code (error codes are discussed in greater detail below). The results of the search are provided to one or more individuals responsible for updating screen scraping scripts. Next, bugs are reported and assigned to a particular individual or group for processing (block **608**).

At block **610**, a user accesses the HTML data (i.e., the screen shot captured from the financial institution) to repair the scripts that are not functioning properly. The procedure then continues to block **612**, which captures the next financial institution screen shot. The procedure returns to block **604** to remove personal information from the captured screen shot.

When a data harvesting script is unable to access a particular web page (or web site) or is unable to locate information on the web page an error occurs. The data harvesting script contains error detection mechanisms that identify errors and generate one or more error codes associated with the identified errors. Each error has an associated error code that identifies the particular error. Table 1 below identifies several example error codes as well as a corresponding title and description of the error that occurred.

TABLE 1

| Error Code | Title | Description |
| --- | --- | --- |
| 100 | Web Page Modified | Unable to retrieve account information from financial institution web page due to changes in web page. |
| 101 | Time Out | Unable to retrieve account information due to high network traffic. |
| 102 | Connection Failed | Unable to retrieve account information due to network connection problems. |
| 103 | Web Site Unavailable | Unable to retrieve account information because the financial institution web site is not available. |
| 104 | Login Failure | Unable to retrieve account information because the username/password combination provided by user failed. |

Different actions may be performed depending on the error detected. For example, if the web page has been modified, the screen shot of the modified web page is provided to one or more individuals to analyze and update the corresponding data harvesting script to properly extract data from the modified web page. If the error indicates a failed network connection, the financial analysis system may attempt to retrieve the desired web pages at a later time. If the error indicates that the username and/or password provided by the user is incorrect, the financial analysis system may request the user verify the username and password associated with the account being accessed.

The error codes may be processed by an automated error handling routine to notify the proper individual, or group of individuals, of the error. For example, a database error may be automatically routed to a group of individuals responsible for managing the database. Other error codes may indicate a problem with the information provided by the user. These error codes, such as an invalid password to access a user account, result in sending an error notice to the user, but do not represent a problem with the financial analysis system.

FIG. 7 is a block diagram showing pertinent components of a computer **700** in accordance with the invention. A

computer such as that shown in FIG. 7 can be used, for example, to perform various procedures such as those discussed herein. Computer **700** can also be used to access a web site or other computing facility to access various financial information. The computer shown in FIG. 7 can function as a server, a client computer, or a financial analysis system, of the types discussed herein.

Computer **700** includes at least one processor **702** coupled to a bus **704** that couples together various system components. Bus **704** represents one or more of any of several types of bus structures, such as a memory bus or memory controller, a peripheral bus, and a processor or local bus using any of a variety of bus architectures. A random access memory (RAM) **706** and a read only memory (ROM) **708** are coupled to bus **704**. Additionally, a network interface **710** and a removable storage device **712**, such as a floppy disk or a CD-ROM, are coupled to bus **704**. Network interface **710** provides an interface to a data communication network such as a local area network (LAN) or a wide area network (WAN) for exchanging data with other computers and devices. A disk storage **714**, such as a hard disk, is coupled to bus **704** and provides for the non-volatile storage of data (e.g., computer-readable instructions, data structures, program modules and other data used by computer **700**). Although computer **700** illustrates a removable storage **712** and a disk storage **714**, it will be appreciated that other types of computer-readable media which can store data that is accessible by a computer, such as magnetic cassettes, flash memory cards, digital video disks, and the like, may also be used in the exemplary computer.

Various peripheral interfaces **716** are coupled to bus **704** and provide an interface between the computer **700** and the individual peripheral devices. Exemplary peripheral devices include a display device **718**, a keyboard **720**, a mouse **722**, a modem **724**, and a printer **726**. Modem **724** can be used to access other computer systems and devices directly or by connecting to a data communication network such as the Internet.

A variety of program modules can be stored on the disk storage **714**, removable storage **712**, RAM **706**, or ROM **708**, including an operating system, one or more application programs, and other program modules and program data. A user can enter commands and other information into computer **700** using the keyboard **720**, mouse **722**, or other input devices (not shown). Other input devices may include a microphone, joystick, game pad, scanner, satellite dish, or the like.

Computer **700** may operate in a network environment using logical connections to other remote computers. The remote computers may be personal computers, servers, routers, or peer devices. In a networked environment, some or all of the program modules executed by computer **700** may be retrieved from another computing device coupled to the network.

Typically, the computer **700** is programmed using instructions stored at different times in the various computer-readable media of the computer. Programs and operating systems are often distributed, for example, on floppy disks or CD-ROMs. The programs are installed from the distribution media into a storage device within the computer **700**. When a program is executed, the program is at least partially loaded into the computer's primary electronic memory. As described herein, the invention includes these and other types of computer-readable media when the media contains instructions or programs for implementing the steps described below in conjunction with a processor. The invention also includes the computer itself when programmed according to the procedures and techniques described herein.

For purposes of illustration, programs and other executable program components are illustrated herein as discrete blocks, although it is understood that such programs and components reside at various times in different storage components of the computer, and are executed by the computer's processor. Alternatively, the systems and procedures described herein can be implemented in hardware or a combination of hardware, software, and/or firmware. For example, one or more application specific integrated circuits (ASICs) can be programmed to carry out the systems and procedures described herein.

Although the description above uses language that is specific to structural features and/or methodological acts, it is to be understood that the invention defined in the appended claims is not limited to the specific features or acts described. Rather, the specific features and acts are disclosed as exemplary forms of implementing the invention.

United States Patent: 7,013,310                                              Page 12 of 12

* * * * *

JS44

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by the Rules of Court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the Civil Docket Sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
CashEdge, Inc.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
EXCEPT IN U.S. PLAINTIFF CASES)
Leatherhead, Surrey, England

(c) ATTORNEYS FIRM NAME, ADDRESS AND PHONE NO.
Connolly Bove Lodge & Hutz LLP, 1007 N. Orange Street, PO Box 2207, Wilmington, DE 19899, Arthur G. Connolly, III. Esq.
(302) 658-9141

## DEFENDANTS
Yodlee, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
[X] 3 Federal Question (U.S. Government Not A Party)

☐ 2 U.S. Government Defendant
[ ] Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

[X] 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | ☐ 362 Personal Injury - Med. Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 620 Other Food & Drug | ☐ 443 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 366 Asbestos Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander |  | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability |  | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | [X] 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | SOCIAL SECURITY | ☐ 850 Securities/commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability |  |  | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS |  |  | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence |  | FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | ☐ 790 Other Labor Litigation |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property |  | ☐ 540 Mandamus & Other |  |  |  |
|  |  | ☐ 550 Other |  |  |  |

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY) 35 U.S.C. § 101, et seq. - patent infringement; 28 U.S.C. §§ 1331 and 1338(a)

## VII. REQUESTED IN COMPLAINT:
DEMAND $ Damages and Injunctive relief
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions)

DATE: March 14, 2006   SIGNATURE OF ATTORNEY OF RECORD   *Arthur J. Connolly III (#2667)*

FOR OFFICE USE ONLY
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS 44 Reverse

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44**

Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.  (a) **Plaintiffs-Defendants.** Enter names (last, first middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdiction be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

V. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

VI. **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers of multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.
Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.
**Date and Attorney Signature.** Date and sign the civil cover sheet.

125334v1(CB)