IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CASHEDGE, INC.,<br><br>            Plaintiff,<br><br>    v.<br><br>YODLEE, INC.,<br><br>            Defendant. | C.A. No. 06-170-JJF |

**DEFENDANT YODLEE, INC.'S OPENING BRIEF IN SUPPORT
OF ITS MOTION TO TRANSFER**

**FISH & RICHARDSON P.C.**
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, Delaware  19899-1114
Telephone:  (302) 652-5070

David M. Barkan (CA Bar #160825)
Craig R. Compton (CA Bar #215491)
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone:  (650) 839-5070

Attorneys for Defendant
YODLEE, INC.

DATED:  May 4, 2006

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS  ..................................1

II.   SUMMARY OF ARGUMENT  ....................................................2

III.  STATEMENT OF FACTS  ......................................................4

    A.    The Parties  ........................................................4

    B.    Pending Litigation Between the Parties  ...........................4

    C.    Location of Relevant Witnesses  ...................................7

    D.    The Same Products and Features are at Issue in the
          Northern District Action  ........................................8

IV.   ARGUMENT  ...................................................................8

    A.    Legal Standards  ..................................................8

    B.    Transfer Is Warranted Under the Statutory Requirements
          of 28 U.S.C. § 1404(a)  ..........................................10

    C.    Public Interest Factors Favor Transfer  ..........................12

    D.    Private Interest Factors Favor Transfer  .........................14

          1.   CashEdge's Forum Preference Does Not Outweigh
               the Interests of Justice Served by Transfer  ...............14

          2.   Yodlee's Forum Preference Favors Transfer  .................18

          3.   The Convenience of the Parties Favors Transfer  ............19

          4.   The Convenience of the Witnesses Favors Transfer  .........19

          5.   No Other Private Interest Factor Weighs Against Transfer  ..20

V.    CONCLUSION  .................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Affymetrix, Inc. v. Synteni, Inc.*
   28 F. Supp.2d 192 (D. Del. 1998) .................................................    9, 10, 16, 20

*Altera Corp. v. Xilinx, Inc.*
   C.A. No. 95-242-JJF (D. Del. Mar. 29, 1996) ............................    16

*American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*
   1999 WL 615175, 1999 U.S. Dist. LEXIS 12455
   (D. Del. Aug. 3, 1999) ...................................................................    10, 11

*Bayer AG v. Biovail Corp.*
   C.A. No. 00-466-JJF (D. Del. July 17, 2000) ............................    14

*Bayer Bioscience N.V. v. Monsanto Co.*
   2003 WL 1565864 (D. Del. Mar. 25, 2003) ...............................    15

*Brunswick Corp. v. Precor, Inc.*
   2000 WL 1876477, 2000 U.S. Dist. LEXIS 22222
   (D. Del. Dec. 12, 2000).................................................................    11, 15

*Continental Casualty Co. v. American Home Assurance Co.*
   61 F. Supp.2d 128 (D. Del. 1999) .................................................    9, 14

*Ferring B.V. v. Barr Laboratories, Inc.*
   437 F.3d 1181 (Fed. Cir. 2006) ....................................................    7

*Green Isle Partners, Inc. v. The Ritz-Carlton Hotel Co.*
   C.A. No. 01-202-JJF (D. Del. Nov. 2, 2001) ............................    15

*Joint Stock Society v. Heublein, Inc.*
   936 F. Supp. 177 (D. Del. 1996) ..................................................    11

*Jumara v. State Farm Ins. Co.*
   55 F.3d 873 (3d Cir. 1995) ...........................................................    12, 14

*Nilssen v. OSRAM Sylvania, Inc.*
   C.A. No. 00-695-JJF (D. Del. May 1, 2001) .............................    15

## TABLE OF AUTHORITIES

**Page(s)**

*Pall Corp. v. Bentley Labs., Inc.*
    523 F. Supp. 450 (D. Del. 1981) .................................................. 11

*SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*
    833 F. Supp. 450 (D. Del. 1993) .................................................. 15

*Smithkline Corp. v. Sterling Drug, Inc.*
    406 F. Supp. 52 (D. Del. 1975) .................................................. 11, 16

*Stewart Organization, Inc. v. Ricoh Corp.*
    487 U.S. 22 (1988) ....................................................... 9

*Textron Innovations, Inc. v. The Toro Co.*
    2005 WL 2620196 (D. Del. Oct. 14, 2005) ................................ 20

*Van Dusen v. Barrack*
    376 U.S. 612 (1964) ....................................................... 9

*Virgin Wireless, Inc. v. Virgin Enters. Ltd.*
    201 F. Supp.2d 294 (D. Del. 2002) ............................................ 9

*Yodlee, Inc. v. Block Financial Corporation and H&R Block, Inc..*
    C.A. No. 03-600 JFF (D. Del. Aug. 28, 2003) ........................... 2, 15, 16


## Other Authority

28 U.S.C § 1404(a)  ................................................................ 8, 9, 10

Fed. R. Civ. P. 45(b)(2) ........................................................... 13

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Long before Plaintiff CashEdge, Inc. ("CashEdge") filed this action against defendant Yodlee, Inc. ("Yodlee") on March 14, 2006, the parties were already embroiled in a nine-patent litigation in the Northern District of California. That action, Case No. C-05-1550-SI (N.D. Cal.), is a consolidated action which brought together a six-patent litigation filed by Yodlee on April 14, 2005 and a nine-patent declaratory relief action filed by CashEdge on June 22, 2005. In each of those prior actions, the filing party filed in the Northern District of California, where both Yodlee and CashEdge have business offices and a substantial presence. Most significantly, the consolidated Northern District of California action is factually closely related to the new action filed in Delaware by CashEdge.

The Yodlee patents asserted in the Northern District of California are not just prior art to the CashEdge patent asserted in Delaware, they also form the basis for Yodlee's inequitable conduct allegations in this litigation. When Yodlee alleged in its answer that CashEdge's CEO and inventor, Sanjeev Dheer, was intimately familiar with the Yodlee patents and committed inequitable conduct by not disclosing them in prosecution of his own patent, it did so specifically because of the knowledge that Mr. Dheer has acquired through the pending Northern District of California action. *See* Defendant Yodlee's Answer to Plaintiff CashEdge's Complaint, D.I. No. 5 at ¶¶ 20-24.

In this action, CashEdge alleges that Yodlee infringes United States Patent No. 7,013,310 (the "`310 patent"), the subject matter of which, just like the Yodlee patents, relates to the retrieval and processing of data collected from Internet destinations. The Honorable Susan Illston of the Northern District of California has already invested substantial judicial resources in this technology. The parties presented Judge Illston with

a two-hour technology tutorial on April 19, 2006 and argued the Markman issues in nine patents on April 26, 2006. Judge Illston will most likely have issued several significant rulings addressing the claim construction and technology issues that relate to both cases before any substantial discovery takes place in the present case.

As will be shown below, the factors supporting transfer of this action are compelling. In similar situations, this Court has transferred cases to the district where a factually related action was already pending — including in a prior case involving the defendant in this action, Yodlee. *See, Yodlee, Inc. v. Block Financial Corporation and H&R Block Inc.*, C.A. No. 03-600-JJF, Order (D. Del. Aug. 28, 2003) (transferring an action between two Delaware corporations to a district where the parties were litigating another patent infringement matter involving related technology and prior art). In that case, this Court recognized the compelling judicial economy that will be achieved in having the same Court handle the technical issues in related cases as well as the importance of avoiding inconsistent rulings between the cases. Here, these factors are especially strong because of the direct connection between Yodlee's inequitable conduct claim against the `310 patent in this case and the technology currently being addressed by Judge Illston in the Northern District of California action.

## II.    SUMMARY OF ARGUMENT

1.    Transfer of this action to the Northern District of California is warranted for the convenience of the parties and witnesses and to further the interests of justice. The case between Yodlee and CashEdge now pending in the Northern District of California involves the same parties and the same technology at issue in this case. The interests of justice will best be served by having all related disputes between the same parties and relating to the same field of technology decided by the same Court.

2

This action presents a compelling case for transfer in at least four respects: (a) the technology overlap is direct – Yodlee and CashEdge are business competitors with current products relating to the subject matter of both actions; (b) the nine patents in the Northern District of California action all relate to accessing, retrieving, and manipulating data specifically from Internet destinations – just as CashEdge's `310 patent does; (c) CashEdge has become intimately familiar with the Yodlee patents through the Northern District of California action and CashEdge's conduct in that action is directly related to the inequitable conduct claim in the present action — indeed, the factual history of the Northern District of California action provides the specific basis for Yodlee's allegation that Mr. Dheer and CashEdge had direct knowledge of the Yodlee patents yet they failed to cite them to the PTO during prosecution of CashEdge's `310 patent; and (d) the risk of either party taking inconsistent positions about the scope of the Yodlee patents in the two actions is minimized by having a single Judge hear both cases.  Judicial efficiency and consistency would be promoted by having these closely-related matters handled by the same Judge; and

2.      Because both parties maintain offices, including Yodlee's Headquarters, in the Northern District of California, and because many of the witnesses will be deposed in the Northern District action anyway, the convenience of the parties also weighs in favor of transfer.  Additionally, neither party to this litigation has offices, personnel, or significant assets in Delaware.

Accordingly, Yodlee's motion to transfer should be granted.

## III.    STATEMENT OF FACTS

### A.    The Parties

Plaintiff CashEdge, Inc. ("CashEdge") is a Delaware corporation having its principal place of business in New York, NY and maintaining another office in San Jose, California, which is in the Northern District of California.  [Ex. A].[1]  CashEdge's technology platform provides computer software applications for accessing, retrieving, and manipulating data specifically from Internet destinations.  Using the same technology platform, CashEdge offers other services such as the transferring of funds between accounts and/or the funding of a new account.  [Ex. B].  CashEdge is also the assignee of United States Patent No. 7,013,310 (the "`310 patent").  [Ex. C].

Defendant Yodlee, Inc. ("Yodlee") is a Delaware corporation having its principal place of business in Redwood City, California, which is in the Northern District of California.  Yodlee is a pioneer in the data aggregation field as evidenced by its extensive patent portfolio, including but not limited to the patents it has asserted in the Northern District action:  United States Patent Nos. 6,567,850; 6,317,783 (the " `783 patent"); 6,199,077 (the " `077 patent"); 6,633,910; 6,510,451; 6,802,042; 6,412,073 (the " `073 patent"); 6,594,766; and 6,405,245.[2]  Yodlee, just like Cashedge, offers competitive products and services for accessing, retrieving, and manipulating data specifically from Internet destinations.

### B.    Pending Litigation Between the Parties

CashEdge filed this suit against Yodlee alleging infringement of the `310 patent on March 14, 2006 — the same day that the `310 patent issued.  Yodlee answered with a

---

[1]    All exhibits are attached to the Declaration of Kyle Wagner Compton
[2]    The `783, `077, and `073 patents are attached as Exhibits D-F.

counterclaim for declaratory judgment of non-infringement, invalidity, and

unenforceability of the '310 patent.  As noted above, this is not the first matter of

contention to arise between CashEdge and Yodlee.  Yodlee, by way of a letter dated

November 17, 2004 — some fourteen months before the issuance of the `310 patent —

informed CashEdge of the existence of five of its patents and suggested that CashEdge

take a license to those patents.[3]  [Ex. G].  The `783 patent and the `077 patent were

among the patents disclosed in the November 17, 2004 letter.  Six months later, on April

14, 2005, Yodlee filed a lawsuit against CashEdge in the Northern District of California

alleging that CashEdge infringed six of Yodlee's patents.[4]  On June 22, 2005, CashEdge

filed suit in the Northern District of California seeking declaratory judgment of non-

infringement, invalidity, and unenforceability of nine Yodlee patents, including the `783,

`077 and `073 patents.  [Ex. H].  Yodlee then counterclaimed asserting that CashEdge

infringes all nine patents-at-issue.[5]  [Ex. I].  These actions were subsequently

consolidated into a single action which is now pending in the Northern District of

California as Case No. C-05-01550-SI.

The litigation currently pending in the Northern District of California

demonstrates that litigation there is convenient and just for CashEdge.  CashEdge is

clearly amenable to litigating in the Northern District of California because it filed its

own declaratory judgment action against Yodlee in the Northern District of California —

and included three patents in that action which were not part of the original action Yodlee

---

[3]  The patents Yodlee disclosed in its November 17, 2004 letter are U.S. Patent Nos. 6,567,850; 6,317,783; 6,199,077; 6,633,910; and 6,510,451.
[4]  The patents Yodlee asserts in its infringement action are U.S. Patent Nos. 6,567,850; 6,317,783; 6,199,077; 6,633,910; 6,510,451; and 6,802,042.
[5]  The patents for which CashEdge seeks declaratory judgment are U.S. Patent Nos. 6,567,850; 6,317,783; 6,199,077; 6,633,910; 6,510,451; 6,802,042; 6,412,073; 6,594,766; and 6,405,245.

filed against CashEdge. There is no reason why CashEdge could not also have brought the present suit in the Northern District of California, and no reason why CashEdge should object to the venue that it has already chosen.

The second issue relevant to this motion to transfer is the similarity in subject matter of the '310 patent and the patents-at-issue in the pending litigation in the Northern District of California. The '310 patent relates to methods and systems for extracting electronic data, such as financial data, from data sources across the Internet. The Yodlee '783, '077 and '073 patents disclose closely related methods and/or systems for gathering and compiling data from Internet destinations, and are the subject of Yodlee's invalidity and unenforceability defenses concerning CashEdge's `310 patent.

Also as noted above, the Northern District action is closely related to the present case for another reason: the `783 patent, the `077 patent, and the `073 patent were known to CashEdge and at least one of the named inventors of CashEdge's `310 patent, Sanjeev Dheer, but not disclosed to the PTO during the prosecution of the `310 patent. Yodlee disclosed the `783 patent and the `077 patent to CashEdge in a November 17, 2004 letter addressed to CashEdge's CEO, Sanjeev Dheer. [Ex. G]. CashEdge was also aware of the `073 patent at least by June 22, 2005, when it sought declaratory judgment of non-infringement, invalidity, or unenforceability of that patent — almost nine months before the `310 patent issued on March 14, 2006. As explained in further detail in Yodlee's Answer and Counterclaim to CashEdge's complaint in this action, CashEdge had an obligation to disclose this prior art to the Patent Examiner during the prosecution of the `310 patent. *See* Defendant Yodlee's Answer to Plaintiff CashEdge's Complaint, D.I. No. 5 at ¶¶ 20-24. It will be most efficient for Judge Illston to address this inequitable

conduct allegation because she has already invested significant time in learning the technology behind the '783, '077, and '073 patents — which means she is already well-equipped to address the "materiality" of those references to the CashEdge `310 patent.[6]

### C.    Location of Relevant Witnesses

Yodlee's relevant witnesses reside in the Northern District of California as they are headquartered in Redwood City, which is about 25 miles south of San Francisco. CashEdge maintains an office in San Jose, California, and it appears that some of the CashEdge witnesses are located in the Northern District of California as well. For example, one of the named inventors, Venkatacahri Dilip, resides or did reside in Cupertino, California. *See* Inventors listed on the `310 patent [Ex. C]. Also, the attorney, Steven Sponseller, and firm (Lee & Hayes LLP) that prosecuted the `310 patent are located in Spokane, Washington. The convenience of all of those witnesses favors trying this case in the Northern District of California.

Another factor favoring transfer is the availability of compulsory process for trial. Yodlee does not believe any relevant witnesses for either party reside in Delaware. Although CashEdge is headquartered in New York City, third parties residing there will not be subject to the subpoena power of this Court because New York is outside of this judicial district and more than one hundred miles from the courthouse in Wilmington. In short, it is likely that no witness will be within the subpoena power of the Delaware District Court. On the other hand, third party witnesses, such as former employees, are

---

[6]    Determination of the materiality of withheld prior art references is central to the inequitable conduct analysis. *See, e.g., Ferring B.V. v. Barr Laboratories, Inc.*, 437 F.3d 1181, 1186 (Fed. Cir. 2006) ("The inequitable conduct analysis is performed in two steps comprising first, a determination of whether the withheld reference meets a threshold level of materiality and intent to mislead, and second, a weighing of the materiality and intent in light of all the circumstances...") (quotations omitted).

much more likely to be found within the subpoena power of the Northern District of California, where both parties maintain offices.

Finally, most if not all of the relevant witnesses in this action will be deposed in the Northern District action. Requiring these witnesses to be deposed again in this action will cause substantial inconvenience to all parties.

### D.    The Same Products and Features are at Issue in the Northern District Action

In the Northern District Action, Yodlee has accused the following CashEdge products and features: AggregateNow, OpenNow, TransferNow, and OpenNow/FundNow features from CashEdge's Bank, Credit Union, Wealth Management and Advisor Suite offerings. A significant portion of these accused features are related to the screen scraping technology that CashEdge describes in the '310 patent. [Ex. C at 5:10-20]. Yodlee has already sought and received discovery regarding CashEdge's screen scraping and aggregation features in the Northern District Action. Additionally, CashEdge has accused Yodlee features and products in its complaint for which it has also sought discovery in the Northern District Action. Yodlee has asserted that those same accused products and features are covered by the patents Yodlee has asserted in the Northern District Action. Since the same products are subject to discovery in both cases, it would be wasteful and inefficient for the parties to repeat the discovery process in this action. It would also be wasteful and inefficient to have two different Courts address discovery disputes regarding the same products and same set of documents.

### IV.    ARGUMENT

#### A.    Legal Standards

A court may transfer a civil action pursuant to 28 U.S.C. § 1404(a):

> For the convenience of parties and witnesses, in the interest of justice, a
> district may transfer any civil action to any other district or division where
> it might have been brought.

Courts have noted that 28 U.S.C. § 1404(a) is designed "to prevent the waste of 'time,

energy and money' and 'to protect litigants, witnesses and the public against unnecessary

inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *see also*

*Virgin Wireless, Inc. v. Virgin Enters. Ltd.,* 201 F. Supp.2d 294, 299 (D. Del. 2002).

In considering a motion to transfer under § 1404(a), the Court is to give the

plaintiff's choice of forum deference. *Continental Casualty Co. v. American Home*

*Assurance Co.*, 61 F. Supp.2d 128, 131 (D. Del. 1999). Accordingly, it is the movant's

burden to show that the balance of interests strongly weighs in favor of transfer. *Id.*

Nevertheless, the plaintiff's choice of forum is just one factor and the standard for

granting motions to transfer is flexible. Courts are permitted to exercise discretion under

§ 1404(a), and may adjudicate motions to transfer according to an individualized, case-

by-case consideration of convenience and fairness. *Stewart Organization, Inc. v. Ricoh*

*Corp.*, 487 U.S. 22, 29 (1988) (quotations omitted). In determining whether transfer is

warranted, courts consider not only the statutory requirements of convenience and the

interests of justice, but also "all relevant factors to determine whether, on balance, the

litigation would more conveniently proceed and the interest of justice [would] be better

served by a transfer to a different forum." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp.2d

192, 196-7 (D. Del. 1998) (citation omitted).

Relevant factors to be considered include public interests and private interests. *Id.*

at 197 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). Public

interests include: enforceability of judgment; practical considerations that could make

9

the trial easy, expeditious or inexpensive; court congestion; local interests in deciding a controversy; and local public policy. *Id.* Private interests include: the plaintiff's choice of forum; defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial position; the convenience of the witnesses; and the location of records and documents. *Id.* "Motions to transfer venue are granted as well if there is a related case which has been filed first or otherwise is the more appropriate vehicle to litigate the issues between the parties." *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.,* 1999 WL 615175, *5, 1999 U.S. Dist. LEXIS 12455, *18 (D. Del. Aug. 3, 1999).

Here, the balance of interests strongly weighs in favor of transfer. Earlier-filed cross-actions between the same parties and involving the same field of technology have been consolidated and are pending in the Northern District of California. The interests of justice would be best served by having a single judicial officer try both cases. In patent cases, especially those involving the same technology, products, and parties, the interests of justice are served by having one Court decide the issues so as to avoid potentially conflicting rulings. Moreover, other than plaintiff's choice of forum, the other relevant private and public interests also weigh in favor transferring this case to the Northern District of California. For these reasons, as set forth more fully below, Yodlee's motion to transfer should be granted.

**B.    Transfer Is Warranted Under the Statutory Requirements of 28 U.S.C. § 1404(a)**

A court may transfer an action pursuant to 28 U.S.C § 1404(a) if two conditions are met:  1) the plaintiff could have brought the case initially in the proposed transferee forum; and 2) the transfer would promote the convenience of the parties and witnesses

10

and would be in the interest of justice. *Joint Stock Society v. Heublein, Inc.*, 936 F. Supp. 177, 185 (D. Del. 1996) (citations omitted). As to the first condition, CashEdge clearly could have brought this case in the Northern District of California, the venue where CashEdge already filed a complaint seeking declaratory judgment against Yodlee.

As to the second condition, transfer of this case to the Northern District of California would promote the convenience of the parties and witnesses and would be in the interest of justice because a related case involving similar technology, Case No. C-05-01550-SI, is already pending in the Northern District of California. This Court has recognized "the strong public policy favoring the litigation of related claims before the same tribunal." *Smithkline Corp. v. Sterling Drug, Inc.*, 406 F. Supp. 52, 55 (D. Del. 1975). The interests of justice will be served by having this case tried in the Northern District of California. "Where related lawsuits exist, 'it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court.'" *Brunswick Corp. v. Precor, Inc.*, 2000 WL 1876477, * 3 (D. Del. Dec. 12, 2000); *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*, 1999 WL 615175, *5 (D. Del. Aug. 3, 1999) ("Motions to transfer venue are granted as well if there is a related case which has been filed first or otherwise is the more appropriate vehicle to litigate the issues between the parties."); *Pall Corp. v. Bentley Labs., Inc.*, 523 F. Supp. 450, 453 (D. Del. 1981) ("[I]t is in the interest of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals."). By litigating both of these cases before the same Court, the potential for conflicting rulings will be essentially eliminated resulting in a "clean" record if either party decides to appeal a final determination. Since both cases involve the same parties and the same

11

technology and products, the interest of justice factor weighs heavily in favor of transferring this case to the Northern District of California.

Litigating both cases in the Northern District of California will also be convenient to the parties and their witnesses. Both parties maintain offices in Northern California while neither maintains an office in Delaware. Because the technology involved in both cases is so closely related, and because many of the same patents are to be at issue in both cases, litigating both cases together will be much more convenient for witnesses in that redundant depositions and court appearances will likely be avoided.

     C.    **Public Interest Factors Favor Transfer**

The Third Circuit Court of Appeals, in *Jumara v. State Farm Ins.*, 55 F.3d 873, 879 (Fed. Cir. 1995), identified public interest factors relevant to consideration of a motion to transfer. Those factors include: 1) the enforceability of judgment; 2) practical considerations that could make the trial easy, expeditious or inexpensive; 3) the relative administrative difficulty in the two districts resulting from court congestion; 4) the local interest in deciding local controversies at home; and, 5) the public policies of the two locales.

There are many practical considerations that would make litigation of this case in the Northern District of California easy, expeditious, and less expensive. The pending case between Yodlee and CashEdge in the Northern District of California involves the same technology as this case, as evidenced by the technology disclosed in the '310 patent and at least the Yodlee patents cited above (the '783, '077, and '073 patents). Additionally, CashEdge has accused features and products in its complaint for which it has also sought discovery in the Northern District Action because Yodlee has asserted that those same features are covered by the patents Yodlee has asserted in the Northern

12

District Action.  Since the same patents and products are implicated in this case and in

the California case, there will be significant discovery overlap between the two cases.

Furthermore, trying both cases in the Northern District of California will eliminate

needless redundancy, improve efficiency, and mitigate expenses.

        Litigating this case in Delaware is likely to be more difficult and more expensive

than litigating in the Northern District of California because neither Yodlee nor

CashEdge maintains an office in Delaware, while both companies maintain offices in the

Northern District of California.  Difficulty may also arise in compelling witnesses to

appear in Delaware, for similar reasons.  This Court has power to subpoena witnesses

within the District of Delaware and within one hundred miles of the District Court in

Wilmington, Delaware.  Fed. R. Civ. P. 45(b)(2).  Yodlee does not believe any relevant

witnesses for either party reside within this judicial district.  While third party witnesses

such as former employees are likely to reside within the Northern District of California,

where both parties maintain offices, it is unlikely that any such witnesses will be subject

to the subpoena power of this Court.

        Litigating this case in Delaware is likely to be less expeditious than litigating in

the Northern District of California.  The Northern District Action, which has been

pending for almost one year, is already well underway,  the parties having already

presented a two-hour technology tutorial on April 19, 2006 and argued Markman issues

in nine patents on April 26, 2006.  By way of comparison, this action, filed little over one

month ago, has only just begun.  It is likely that several significant rulings addressing

claim construction and technology issues will issue in the Northern District case before

the parties even have conducted any significant discovery in this action.

Other public interest factors also weigh in favor of transfer or are irrelevant. Any judgment by the Northern District of California will be fully enforceable. Irrespective of court congestion, it will be more expedient to try this case in the Northern District of California than to initiate a second action in this Court. Finally, there are no local interests or public policy considerations that favor trying this case in Delaware as opposed to California as neither party has any significant presence in the state of Delaware, while both parties maintain offices in the Northern District of California.

> **D.      Private Interest Factors Favor Transfer**

The Third Circuit Court of Appeals has also identified private interest factors relevant to consideration of a motion to transfer. *Jumara*, 55 F.3d at 879. Those factors include: 1) plaintiff's forum preference; 2) defendant's preference; 3) whether the claims arose elsewhere; 4) the convenience of the parties as indicated by their relative physical and financial condition; 5) the convenience of the witnesses (but only to the extent that the witnesses may actually be unavailable for trial in one of the districts); and 6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

> **1.      CashEdge's Forum Preference Does Not Outweigh the Interests of Justice Served by Transfer**

Of the private interest factors noted above, only the plaintiff's forum choice weighs against transfer of this case. Although the plaintiff's choice of forum is entitled to deference, that factor alone will not suffice to prevent transfer where, as here, the balance of interests strongly weighs in favor of transfer. *See Bayer AG v. Biovail Corp.*, C.A. No. 00-466-JJF, Mem. Order at 2 (D. Del. July 17, 2000) ("[T]he need for judicial consistency outweighs the Plaintiffs' choice of forum") [Ex. J]; *Continental Casualty*

14

*Co.*, 61 F. Supp.2d at 131.  Although it appears CashEdge may have selected this forum

for the reason that it is incorporated in Delaware, this Court has made clear that a

plaintiff's incorporation in this state does not by itself bar transfer to another jurisdiction

when transfer is warranted.  *See, e.g., Nilssen v. OSRAM Sylvania, Inc.*, C.A. No. 00-695-

JJF, Mem. Op. at 5 (D. Del. May 1, 2001) ("The mere fact that a defendant is

incorporated in a given forum does not mean that transfer to another forum is

unwarranted.") (citations omitted) [Ex. K]; *Green Isle Partners, Inc. v. The Ritz-Carlton

Hotel Co.*, C.A. No. 01-202-JJF, Mem. Op. at 6 (D. Del. Nov. 2, 2001) ("[W]here a

defendant can demonstrate that an alternative forum would be more convenient and

would better serve the interests of justice, because that forum has substantial connections

with the litigation, incorporation in Delaware will not prevent transfer.") [Ex. L]; *SAS of

Puerto Rico, Inc. v. Puerto Rico Tel. Co.*, 833 F. Supp. 450, 452-53 (D. Del. 1993)

(same).

    Moreover, this Court has not hesitated to transfer cases brought by Delaware

corporations when warranted.  *See, e.g., Yodlee v. Block Financial* [Ex. M]; *Brunswick

Corp.*, 2000 WL 1876477, 2000 U.S. Dist. LEXIS 22222 (transferring an action between

two Delaware corporations, neither of which maintained a physical presence in Delaware,

to a district where the parties had previously litigated one of the patents-in-suit and where

a separate action involving a parent patent of one of the patents in suit had already been

filed); *see also Bayer Bioscience N.V. v. Monsanto Co.*, 2003 WL 1565864 (D. Del. Mar.

25, 2003) (transferring an action in which the defendant was a Delaware corporation to a

district where litigation was pending between the same parties and involving related

patents); *Nilssen v. OSRAM Sylvania, Inc.*, C.A. No. 00-695-JJF (transferring an action in

which the defendant was a Delaware corporation to a district where the parties were already litigating at least six of the twenty-six patents asserted by the plaintiff) [Ex. K]; *Affymetrix*, 28 F. Supp.2d 192 (transferring an action in which the defendants were Delaware corporations to a district where the plaintiff was already litigating some, but not all, of the same patents with an unrelated third party); *Altera Corp. v. Xilinx, Inc.*, C.A. No. 95-242-JJF, mem. op. (D. Del. Mar. 29, 1996) (transferring an action in which the defendant was a Delaware corporation to a district where the parties were already litigating two actions covering related technology and at least one common patent that the parties had filed against one another) [Ex. N]; *Smithkline Corp.*, 406 F. Supp. 52 (D. Del. 1975) (transferring an action in which the defendant was a Delaware corporation to a district where the parties were already litigating the asserted patent).

Of these cases, *Yodlee v. Block Financial* provides an especially compelling analogy to the present case. In that case, Yodlee filed an action in this Court for patent infringement against defendants Block Financial Corp. and H&R Block Group, Inc. during the pendency of an earlier-filed patent infringement action in the Western District of Missouri. The technology involved in the Missouri case was similar, but not identical, to the technology for which Yodlee filed. Defendants filed a motion to transfer to the Western District of Missouri, which Your Honor granted.[7] *See* Order dated August 28, 2003. [Ex. M].

Yodlee opposed Block Financial's motion to transfer, arguing principally that the following factors weighed in favor of trying the case in Delaware: 1) Block Financial was already litigating two cases in Delaware (one of which, the *Simplification* case, was

---

[7]  Yodlee opposed transfer in the 2003 action but respectfully submits that the factual connection between the two actions in this motion is much closer than was present in the 2003 Block litigation, as explained in detail in this brief.

being tried in this Court before Your Honor) both involving the same product that Yodlee

asserted was infringing its patents, which were more closely related to Yodlee's

infringement case than was the litigation pending in the Western District of Missouri; and

2) Delaware had a strong interest in trying the case because Block Financial had offered

accused infringing products specifically targeting Delaware residents with Delaware-

specific features for those products.

     Your Honor granted Block Financial's motion to transfer over Yodlee's objection,

providing the following list of reasons that warranted the transfer of that case:

> "First, that it's the same parties that are in the Missouri case. Second, I
> find that the – that there's related, similar technology, although not
> identical, but that the technology in the Missouri case would be implicated
> in the judges being able to get up to speed with regard to the technical
> issues of the case. Third, I find there is a largely common field of prior
> art. Fourth, I find that the convenience of the parties and witnesses are
> unaffected if the case is transferred to Missouri or remains here in
> Delaware. And fifth, I find that the interests of justice weigh heavily on
> the side of a transfer. And among the reasons that I find support that
> conclusion is that there are, as in any patent case, complex legal issues
> which, although not precisely overlapping, are affected and related
> between the two cases, the case filed here in Delaware and the Missouri
> case, and that these issues should be decided in a consistent manner,
> particularly where the same parties are involved in related technology or
> closely related technology. And the way to ensure that is to have one
> Federal Judge issue rulings so that an appellate record is made clear and
> that there's no confusion between two courts on such complex issues."

*See* Transcript of August 27, 2003 Telephone Conference. [Ex. O at 8:16-9:15].

     The factual matters that Yodlee argued weighed against transfer in *Yodlee v.*

*Block Financial* are not present in this case. There is no co-pending case in the District

of Delaware that is more related to CashEdge's action than the case between Yodlee and

CashEdge currently pending in the Northern District of California. Likewise, Delaware

has no particular interest in trying CashEdge's action. Yodlee has not specifically

targeted Delaware residents with allegedly infringing products, and CashEdge has not

alleged that Yodlee has done so.

17

On the other hand, <u>all</u> of the factors that Your Honor found warranted transfer in the *Block Financial* case are also fully applicable here. First, exactly the same parties are involved in this case and in the case pending in the Northern District of California. Second, the technology involved in this case is similar, if not identical, to the technology at issue in the California case. Third, there is a common field of prior art in this case and the California case — indeed, the patents-at-issue in the California case are asserted to be prior art to the `310 patent in this case. Those patents are also asserted to be the basis for an inequitable conduct allegation specifically arising from CashEdge's knowledge acquired in the Northern District of California Action. Fourth, California is at least as convenient to the parties and witnesses in this case as is Delaware — indeed, since both CashEdge and Yodlee maintain offices in Northern California and neither maintains an office in Delaware, California is likely to be more convenient for both parties than Delaware for litigating this case. Fifth, the interests of justice weigh heavily on the side of transfer because judicial economy and consistency will best be served by having one Federal Judge rule on complex issues involving the same parties and closely related technology.

**2.     Yodlee's Forum Preference Favors Transfer**

While the plaintiff's choice of forum is a factor in deciding a motion to transfer, so too is the defendant's preference of forum. Since Yodlee is headquartered in the Northern District of California and because the parties already have a closely-related and pending litigation ongoing in that district, Yodlee strongly prefers that the cases be maintained in the same forum. Yodlee contends that, because the same products/services, parties, discovery materials and many of the same patents are common

to the two cases, it would be unduly expensive and wasteful to proceed with these two closely related cases in different courts.

        **3.**      **The Convenience of the Parties Favors Transfer**

As noted above, the convenience of both parties heavily favors trying this case in the Northern District of California. Many of the same patents will be implicated in this case and in the California case, and the same witnesses will likely be involved in both actions. Maintaining this case in Delaware would inconvenience such witnesses, potentially requiring them to unnecessarily testify in both California and Delaware. For these reasons, convenience of the parties heavily favors transfer of this case to the Northern District of California.

        **4.**      **The Convenience of the Witnesses Favors Transfer**

The convenience of witnesses is considered only to the extent that the witnesses may actually be unavailable for trial in one of the districts. As noted above, it is more likely that relevant third party witnesses can be compelled to appear in the Northern District of California, where both CashEdge and Yodlee maintain offices, than in the District of Delaware, where neither party maintains and office. For example, former CashEdge employee and named inventor of the '310 patent Venkatacahri Dilip, thought to reside in Cupertino, California, is likely to be subject to the subpoena power of the Northern District of California, but not the District of Delaware. *See* Inventors listed on the '310 patent [Ex. C]. For these reasons, convenience of witnesses heavily favors transfer of this case to the Northern District of California.

19

**5.      No Other Private Interest Factor Weighs Against Transfer**

The remaining private interest factors enumerated in *Jumara* should be afforded little to no weight.  CashEdge has not alleged that its claims arose in the State of Delaware, and patent disputes brought under federal statutes are not local controversies specific to any federal district court.  *See Textron Innovations, Inc. v. The Toro Co.*, 2005 WL 2620196 at *3 (D. Del. Oct. 14, 2005) ("It is well settled that patent rights are not considered state or local matters and do not implicate local interests."); *Affymetrix*, 28 F. Supp.2d at 207.  There is no reason why records cannot be produced in either forum, but it should be noted that documents have already been produced in the Northern District Action and claim construction hearings involving the nine Yodlee patents were held on April 26, 2006.

Because deference owed to the plaintiff's choice of forum is far outweighed in this case by the interests of justice and the balance of other relevant private interest factors, including the defendant's choice of forum, convenience to the parties, and convenience to the witnesses, this case should be transferred to the Northern District of California.

**V.      CONCLUSION**

This case is related to pending litigation between the same parties and involving the same technology filed almost one year ago in the Northern District of California.  The interests of justice weigh heavily in favor of transfer given that this case involves the same technology and products, the same prior art, and many of the same patents as the California case.  Trying this case in Delaware would result in wasteful redundancy and risk judicial inconsistency.  Transferring this case to the Northern District of California will obviate redundancy and promote judicial economy and consistency.  The interests of

20

justice that will be served by transfer greatly outweigh CashEdge's private interest in its choice of forum, and this Court has not hesitated to transfer cases when, as here, earlier-filed, related cases between the same parties were pending in other districts.

Accordingly, Yodlee's motion to transfer this case to the Northern District of California should be granted.

Dated: May 4, 2006                     FISH & RICHARDSON P.C.


                                       By: */s/ William J. Marsden, Jr.*
                                           William J. Marsden, Jr. (#2247)
                                           Kyle Wagner Compton (#4693)
                                           919 N. Market Street, Suite 1100
                                           P. O. Box 1114
                                           Wilmington, Delaware  19899-1114
                                           Telephone:  (302) 652-5070

                                           David M. Barkan (CA Bar #160825)
                                           Craig R. Compton (CA Bar #215491)
                                           500 Arguello Street, Suite 500
                                           Redwood City, CA 94063
                                           Telephone:  (650) 839-5070

                                       Attorneys for Defendant
                                       YODLEE, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 4, 2006, I electronically filed with the Clerk of Court the attached **DEFENDANT YODLEE, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER** using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel.  In addition, the filing will also be sent via hand delivery to:

Arthur G. Connolly, Jr.                 *Attorneys for Plaintiff*
Connolly Bove Lodge & Hutz LLP          *CashEdge, Inc.*
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899

I hereby certify that on May 4, 2006, I have mailed by Federal Express Overnight Mail, the document(s) to the following non-registered participants:

Drew M. Wintringham                    *Attorneys for Plaintiff*
Mark Rueh                              *CashEdge, Inc.*
Clifford Chance US LLP
31 West 52nd Street
New York, NY  10019-6131

*/s/ William J. Marsden, Jr.*
William J. Marsden, Jr.

80032740.doc