**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

CASHEDGE, INC,

             Plaintiff

        v.

YODLEE, INC.,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

C. A.  No. 06-170-JJF

# PLAINTIFF CASHEDGE, INC.'S BRIEF IN OPPOSITION TO YODLEE'S MOTION TO TRANSFER

Arthur G. Connolly, III (No. 2667)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19899-2207
(302) 658-9141

Attorneys for Plaintiff

OF COUNSEL:

Drew M. Wintringham, III
Mark W. Rueh
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019-6131
(212) 878-8000

Dated: May 24, 2006

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ................................................................................ 3

II.     NATURE AND STAGE OF THE PROCEEDING ........................................................ 5

III.    SUMMARY OF THE ARGUMENT .......................................................................... 6

IV.     STATEMENT OF FACTS ........................................................................................ 8

        A.      Plaintiff CashEdge ............................................................................................ 8

        B.      Defendant Yodlee ............................................................................................. 9

        C.      The Northern District of California Lawsuit ................................................... 9

        D.      Location of Relevant Witnesses ................................................................... 11

V.      ARGUMENT ........................................................................................................ 12

        A.      Legal Standard ............................................................................................... 12

        B.      Private Factors Weigh Strongly Against a Transfer of this Case ................... 12

                1.      Plaintiff's Choice of Forum ................................................................ 12

                2.      Defendants Preferred Forum is Irrelevant ....................................... 14

                3.      The Claim Arose in Various Locations ............................................... 15

                4.      The Convenience of the Parties as Indicated by Their Relative Physical
                        and Financial Condition ..................................................................... 15

                5.      The Convenience of the Witnesses is Neutral ................................... 16

                6.      The Location of Books and Records Does Not Favor Transfer to The
                        Northern District of California ........................................................... 17

        C.      Public Interests Compel Retention of this Case ........................................... 17

VI.     CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

Page

*ADE v. KLA Tencor Corp.*,
138 F. Supp. 2d 565 (D. Del. 2001) ................................................................. 13

*Brown v. Insurograph Inc.*,
85 F. Supp. 328 (D. Del. 1949) ....................................................................... 13

*Brunswick Corp. v. Precor Inc.*,
Civ. No. 00-691-GMS, 2000 WL 1876477 (D. Del. Dec. 12, 2000) ................... 10, 11

*Affimetrix, Inc. v. Syntent, Inc.*,
28 F. Supp. 2d 192 (D. Del. 1998) .............................................................. 5, 10, 12

*Altera Corp. v. Xilinx, Inc.*,
C.A. No. 95-242-JJF (D. Del. Mar. 29, 1996) .................................................. 11

*Critikon, Inc. v.. Becton Dickinson Vascular Access, Inc.*,
821 F. Supp. 962 (D. Del. 1993) ..................................................................... 11

*France Telecom S.A. v. Novell, Inc.*,
C.A. No. 02-437-GMS, 2002 WL 31355254 (D. Del. Oct. 17, 2002) ................. 11

*HollyAnne Corp. v. TFT, Inc.*,
199 F.3d 1304 (Fed. Cir. 1999) ...................................................................... 14

*Intel Corp. v. Broadcom Corp.*,
167 F. Supp. 2d 692 (D. Del. 2001) ................................................................ 14

*Joint Stock Society v. Heublein*, Inc.,
936 F. Supp. 177 (D. Del. 1996) .............................................................. 9, 11, 14

*Jumara v. State Farm Ins.* Co.,
55 F.3d 873 (3d Cir. 1995) ............................................................................... 9

*Nilssen v. OSRAM Sylvania, Inc.*,
C.A. No. 00-695-JJF, 2001 U.S. Dist. LEXIS 25570 (D. Del. May 1, 2001) ...... 11

*Shutte v. Armco Steel Corp.*,
431 F.2d 22 (3d Cir. 1970) ......................................................................... 4, 10

*Smithkline Corp. v. Sterling Drug, Inc.*,
406 F. Supp. 52 (D. Del. 1975) ...................................................................... 11

*Steward Org,. Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ........................................................................................................ 9

*Stratos Lightwave, Inc., v. E20 Communications Inc.*,
    C.A. No. 01-309-JJF, 2002 WL 500920 (D. Del. Mar. 26, 2002) ......................... 10, 11

*Unicredito Italiano v. JP Morgan Chase Bank*,
    2002 U.S. Dist. LEXIS 11535 (D. Del. June 26, 2002) ............................................ 15

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*,
    157 F.R.D. 215 (D. Del. 1993) ................................................................................... 13

**STATUTES**

28 U.S.C. § 1404(a) ............................................................................................................ 9

### I.    PRELIMINARY STATEMENT

Plaintiff CashEdge, Inc. ("CashEdge") files this brief in opposition to defendant Yodlee, Inc.'s ("Yodlee") motion to transfer this action to the Northern District of California.  CashEdge properly brought this action in the District of Delaware, asserting infringement by Yodlee of United States Patent No. 7,013,310 (the "'310 patent").

Both CashEdge and Yodlee are incorporated in Delaware and no patent infringement actions involving the '310 patent or any other CashEdge patent have previously been filed.  Yet, apparently for tactical reasons, Yodlee seeks a transfer of this case to the Northern District of California (the "California action") where it brought an unrelated multi-patent litigation involving Yodlee's own patents against CashEdge, admittedly "long before" the present action filed by CashEdge.

Contrary to Yodlee's representations, the California action has nothing to do with the present patent infringement case brought before this Court by CashEdge.  In the California action, Yodlee has alleged that nine *Yodlee patents* are infringed by four *CashEdge products*.  In the present case, CashEdge has asserted that the *CashEdge '310 patent* is infringed by at least six *Yodlee products*.  Accordingly, none of the asserted patents nor any of the accused products identified in the California action overlap with the '310 patent or any of the accused products identified in this case.  In fact, the issues to be considered in the two actions are precisely the opposite – here the Court or jury will be comparing the construed claims of the CashEdge patent to the relevant features of the accused Yodlee products and in the California action the Court or jury will be comparing the construed claims of the Yodlee patents to the relevant features of the accused CashEdge products.  Thus, there is no possibility for "inconsistent rulings between the cases" as Yodlee argues.

Further, because this case and the California action are not related, transfer will not "make the trial easy, expeditious or inexpensive" as Yodlee attempts to demonstrate.  To the extent Yodlee seeks to have these actions consolidated, transferring this case to the Northern District of California - where

1

Yodlee has asserted infringement of 144 claims of the nine Yodlee patents   would render that action even more complicated than it already is, requiring the Court or jury to consider an unrelated CashEdge patent, at least six additional accused Yodlee products and an entirely different infringement and validity analysis.  Consideration of the unrelated CashEdge patent would also require an additional *Markman* hearing (as well as completion of the extensive claim construction schedule provided under that district's Local Patent Rules) and thus significantly delay that action where the claim construction phase has already been completed.  If the cases are not consolidated, transfer would also not render trial easier, more expeditious or inexpensive because any such newly transferred action would require its own schedule and would not benefit from any of the issues decided in the unrelated California action.

Yodlee knows that both cases are unrelated and thus relies on ungrounded accusations of inequitable conduct to make the California action seem relevant for this case.  It is not.  The several Yodlee patents asserted in the California action that Yodlee contends were not disclosed during prosecution of the '310 patent are – at best - irrelevant prior art that do not teach the claimed methods and apparatus for extracting data from captured web pages and generating context-specific error codes if the data cannot be successfully extracted.  Moreover, the task that the Court would be doing in considering the charge of inequitable conduct in this action is altogether different from the tasks that are before Judge Illston in the Northern District of California.  There the Court is *not* looking at what the disclosures of certain Yodlee patents may or may not teach with respect to the claims of the '310 patent.  Rather, the Court in the California action is merely construing certain *disputed claims* of the Yodlee patents and the Court or jury will then be comparing the *construed claims* of the Yodlee patents to the accused products.  Thus, the issues being decided in the California action have nothing to do with the issues to be decided in this action, even with respect to Yodlee's inequitable conduct claim.

Aside from the fact that transferring this action would not make trial easy, expeditious or inexpensive, none of the other relevant factors that Yodlee points to favors transfer.  For example, in this Circuit, the plaintiff's choice of forum is considered "paramount" and not to be "lightly disturbed,"

whereas the defendant's mere preference for another venue is given no weight under this Court's precedent. Moreover, other relevant factors, such as the convenience of the witnesses would remain largely unaffected by transfer and are at best neutral factors. Indeed, Yodlee itself is incorporated in Delaware and initiated its own patent infringement action in this District only several years ago. Therefore, Yodlee has not met its "heavy burden" of showing that CashEdge's choice of forum has been overcome, and its motion to transfer should be denied.

## II.    NATURE AND STAGE OF THE PROCEEDING

CashEdge filed this action on March 14, 2006, alleging that certain Yodlee products, including Yodlee's OnCenter and Funds Transfer for Personal Financial Management, BillDirect and CardDirect for Electronic Bill Payment & Presentment, AdvisorView for Wealth Management, Instant Account Verification for Risk Management, and InsideView for Market Research, infringe CashEdge's '310 patent. On April 4, 2006, Yodlee filed its Answer to Plaintiff's Complaint and Counterclaim for Declaratory Judgment. On April 24, 2006, CashEdge filed its Answer to Defendant's Counterclaim For Declaratory Judgment.

On May 4, 2006, Yodlee moved to transfer this case to the Northern District of California where an unrelated patent infringement action had been filed by Yodlee against CashEdge. This unrelated action was filed on April 14, 2005 – long before the present action - and alleges infringement of six Yodlee patents by certain CashEdge products. [Ex. 1]. On June 22, 2005, CashEdge filed a declaratory relief action against Yodlee asserting that these six Yodlee patents, and three additional Yodlee patents, were not infringed by CashEdge and were invalid.[1] [Ex. 2]. Those actions have been consolidated into a single action, Case No. C-05-1550-SI (N.D. Cal.), pending before Judge Illston. [Ex. 3].

---

[1] Yodlee argues that the declaratory judgement action filed by CashEdge shows that CashEdge is amenable to litigation in the Northern District of California. It does not. There CashEdge brought the declaratory judgment action only because the *same* CashEdge products had been threatened with infringement on three additional Yodlee patents that were in the *same* patent families (i.e., were continuations or continuations-in-part of the previously asserted Yodlee patents sharing the same or near identical specifications) as the six Yodlee patents already asserted by Yodlee in its complaint. This is easily distinguished from the present action which involves an *unrelated* CashEdge patent and the *different* set of accused products.

The California action involving the nine Yodlee patents is significantly underway. On September 30, 2005, Yodlee served its Preliminary Infringement Contentions along with other documents relevant to CashEdge's invalidity defense, and on November 28, 2005, CashEdge served its Preliminary Invalidity Contentions and produced documents relating to the structure and operation of the accused products. [Exs. 4 and 5]. Discovery requests were served by the parties in fall 2005 and documents have been produced by both parties. On December 12, 2005, the parties exchanged proposed terms for claim construction, and in January 2006, the parties exchanged proposed claim constructions and extrinsic evidence. [Exs. 6-7]. On February 10, 2006, the parties filed a Joint Claim Construction and Prehearing Statement. [Ex. 8]. Following briefing and discovery on claim construction issues, including expert discovery, each party presented a one-hour case tutorial on April 19, 2006. On April 26, 2006 that Court held a two-and one-half hour *Markman* hearing concerning disputed terms of the nine asserted Yodlee patents. Within 60 days after that Court's claim construction ruling, the parties are scheduled to submit that case to non-binding mediation. [Ex. 9].

In the present action, the parties submitted a Joint Proposed Scheduling Order on May 1, 2006. On May 11, 2006 the Court entered a Scheduling Order, setting an exchange of pre-discovery disclosures for June 30, 2006, completion and exchange of contention interrogatories, identification of fact witnesses and document production by October 17, 2006 and a close of expert discovery by March 31, 2007. A *Markman* hearing has been scheduled by the Court for April 18, 2007 and a September 6, 2007 date has been reserved for a pretrial conference.

## III.    SUMMARY OF THE ARGUMENT

This action is properly filed before this Court and should not be transferred for at least the following reasons:

1.    "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice … should not be lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Thus, Yodlee bears a "heavy

burden" in showing that the other relevant factors weigh so strongly against the deference afforded to plaintiff so as to justify transfer. *Affimetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 199-200 (D. Del. 1998).

2.    A balancing of the relevant private interests in this action weighs in favor of retaining this action in Delaware. Both, CashEdge and Yodlee are Delaware corporations, both have offices at various locations in the United States and abroad and both offer their products nationwide. Yodlee must also expect being sued in Delaware because of its incorporation here, and indeed Yodlee previously chose this Court as the forum to initiate its own patent litigation. Moreover, the convenience of witnesses does not favor transfer because Yodlee has identified only one third-party witness as "possibly" residing within the power of the Northern District of California. In addition, even though Yodlee emphasizes that it is headquartered in California, this district affords no weight to the convenience of witnesses employed by the parties. Further, even if the convenience of the parties and their witnesses were considered, the District of Delaware is a much more convenient location for CashEdge because it is headquartered in New York, because its trial counsel is from New York and because three out of the four inventors of its asserted '310 patent reside in New York or Connecticut – much closer to this District than the Northern District of California.

3.    A balancing of the public interests in this action also weighs in favor of denying Yodlee's request to transfer this action. Yodlee apparently wants to combine this case with an unrelated case pending in the Northern District of California in which Yodlee accuses CashEdge of infringing its patents. That case is well advanced and already very complex, involving nine Yodlee patents which Yodlee contends are infringed by four CashEdge products. It would become even more complicated and may be significantly delayed if one unrelated CashEdge patent and at least six additional products were added. Moreover, even if the cases were not consolidated, because the legal and factual issues to be addressed in each of the actions are entirely different, this case cannot benefit from any of the results achieved in the Northern District of California Action (such as the Court's claim construction ruling on the nine Yodlee

patents). Thus, transfer would not render trial easier, more expeditious or inexpensive as Yodlee contends.

## IV.    STATEMENT OF FACTS

### A.    Plaintiff CashEdge

Plaintiff CashEdge is a corporation registered under the laws of Delaware, having its principal place of business in New York with other offices in California and India. [Ex. 10]. It serves numerous financial institutions in North America, including four of the top ten banks, and is in the business of providing innovative online financial applications. [Ex. 11]. CashEdge's product line includes OpenNow, FundNow, TransferNow and AggregateNow. [Ex. 12]. OpenNow is a real-time online account opening solution that enables financial institutions to facilitate instant account opening through their web-site. *Id.* FundNow is a real-time online account funding solution that allows prospects to access funding options directly from a financial institution's web site to fund a new account. *Id.* TransferNow enables financial institutions to offer secure inter-institution funds transfer services. *Id.* AggregateNow enables financial institutions to offer customers the ability to see and manage all of their accounts at a single financial institution. *Id.*

CashEdge has been active in research and development of financial online applications and has filed various patent applications worldwide relating to this technology. [Ex. 13]. The application that resulted in the '310 patent was filed on January 3, 2002 and was granted on March 14, 2006. [Ex. 14]. One aspect of the invention addresses how to solve problems concerning data retrieval by providing a mechanism for updating the manner in which data is extracted from web pages when a web page layout is changed. *Id.* For example, when data cannot be extracted, the claimed methods and apparatus utilize the generation of context-specific error codes to assist in analyzing the web page and determining why data could not be extracted from it. *Id.*

B.    Defendant Yodlee

Defendant Yodlee is also a Delaware corporation, having offices in Georgia, California, India and the United Kingdom and provides products and services for assessing and recreating data specifically from internet destinations which it offers nationwide. [Exs. 15 and 16]. In a recent press release, Yodlee boasted that it "has amassed nearly seven million users, over $250 billion in aggregated assets across the network, and more than 100 clients, including the world's top financial institutions and portals, such as Ameriprise Financial, AOL, Bank of America, Fidelity, JPMorgan Chase, Merrill Lynch, MSN, and Wachovia." [Ex. 17].

CashEdge filed the present suit because Yodlee's products, including OnCenter and Funds Transfer for Personal Financial Management, BillDirect and CardDirect for Electronic Bill Payment & Presentment, AdvisorView for Wealth Management, Instant Account Verification for Risk Management, and InsideView for Market Research infringe CashEdge's patented technology embodied in the '310 patent.

C.    The Northern District of California Lawsuit

The Northern District of California action involves nine Yodlee patents and accuses CashEdge's OpenNow, FundNow, TransferNow and AggregateNow products of infringement. Contrary to Yodlee's assertions, the CashEdge '310 patent asserted in the present case has little – if anything – to do with the nine Yodlee patents asserted in the California action.

For example, the Yodlee '910 patent is directed to "a notification alert system" for alerting subscribers a change in a data condition that meets a condition for notification (e.g., a low bank balance). [Ex. 18]. The Yodlee '451 patent is directed to a system "for managing individual component tasks in execution of [a] multi-component task" (e.g., a calendar system to book travel arrangements at various web sites). [Ex. 19]. The Yodlee '042 patent is directed to a method for "providing calculated and solution-oriented personalized summary-reports to a user." [Ex. 20]. The Yodlee '073, '766, and '245 patents are directed to methods for provided a user with automated access (i.e., automated log-on) to a

web site without the user having to enter usernames, passwords or other identification.    [Exs. 21-23]. The Yodlee '850 patent is directed to a method "for determining revenue from an intermediary derived from servicing data requests" which involves "generating an invoice."    [Ex. 24].    These patents are irrelevant to the '310 patent asserted by CashEdge in the present action.    Further, the Yodlee '077 and '783 patents are concerned with retrieving user information from a web site (which was known in the art prior to the Yodlee patents) and teach specific ways to utilize data stores and to summarize data for an end user.    These also do not relate to the claimed methods or apparatus of the '310 patent which, for example, are directed to problem solving techniques of generating context-specific error codes and analyzing a web page to determine why data could not extracted when data cannot be obtained from a web page. [Exs. 25-26].

Apart from the differences in the technology at issue – the infringement and validity analysis from the California action are completely distinct.    In the present action, the infringement issue would focus on whether the accused Yodlee products utilize, for example, the context-error codes involved in the '310 patent's problem solving methods.    In contrast, the infringement issues in the California action have and will continue to focus on whether relevant aspects of CashEdge's products utilize any of the claimed features of the Yodlee patents described above (e.g., providing a "notification alert system" as claimed).    Further, because the focus of the technology is very different, it unlikely the Court in the California action would derive any tangible benefit from the two-hour case tutorial concerning certain claimed features of the Yodlee patents.    Moreover, the Court's efforts in construing the claims of the nine Yodlee patents will not materially assist in the construction of the unrelated '310 patent, which will require consideration of its own intrinsic evidence, i.e., of the '310 patent itself and its file history.

Further, both parties agree that the California action is already well advanced. That case has been pending for over a year and the Court has already conducted a *Markman* hearing.    The parties are set to participate in a non-binding mediation within 60 days after the Court's ruling on claim construction. Transferring the present action to the Northern District of California and potentially consolidating it with

the Yodlee action that is already pending – could severely delay that action and would require an additional *Markman* hearing, potentially hindering the parties' efforts to mediate their dispute through the scheduled mediation. Even if the present action is transferred but not consolidated, delay of the present action, in which this Court has already issued a Rule 16 Scheduling Order, is still likely given the Northern District of California's extensive Local Patent Rules governing the claim construction process which could not even begin until after the transfer.

        D.      Location of Relevant Witnesses

Yodlee asserts that some relevant witnesses employed by the parties may reside in the Northern District of California. However, as discussed below, the location of party witnesses is largely irrelevant and only the location of third party witnesses not within the control of the parties is given weight. In this regard, Yodlee only identifies one such individual, one of the four co-inventors named on the '310 patent, as residing within the reach of the Northern District of California. Yodlee fails to note that three of the four co-inventors are shown to reside in New York or Connecticut, outside the subpoena power of that judicial district and conveniently located much closer to the Courthouse in Delaware. [Ex. 14]. The only other third-party witness identified by Yodlee, patent attorney Steven Sponseller, is located in Spokane, Washington, also outside the subpoena power of the Northern District of California.

V.        ARGUMENT

        A.      Legal Standard

An action may only be transferred pursuant to 28 U.S.C. § 1404(a) if this would be in the interest of justice. *Joint Stock Society v. Heublein*, Inc., 936 F. Supp. 177, 185 (D. Del. 1996). To decide a motion to transfer, courts may adjudicate according to an individualized, case-by-case consideration of convenience and fairness. *Steward Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

The analyses for transfer in this District has been well documented and consists of both private and public factors. *Jumara v. State Farm Ins.* Co., 55 F.3d 873, at 879 (3d Cir. 1995). The Third Circuit

9

has identified a non-exclusive list of factors that have been used by this Court when exercising its discretion in ruling on requested transfers. *Id.* The private factors may include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of witnesses; and (6) the location of books and records. *Id.*

Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) court congestion; (4) local interests in deciding a controversy; and (5) local public policy. *Id.*

B.    Private Factors Weigh Strongly Against a Transfer of this Case

1.    Plaintiff's Choice of Forum

This Court and the Third Circuit have repeatedly held that the plaintiff's choice of forum is a "paramount" consideration that is not to be "lightly disturbed" when deciding a motion to transfer. *See Brunswick Corp. v. Precor Inc.*, Civ. No. 00-691-GMS, 2000 WL 1876477, *2 (D. Del. Dec. 12, 2000); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *Jumara v. State Farm Ins.* Co., 55 F.3d 873, 879-80. The burden is on the moving party to show that the balance of convenience and the interests of justice weigh in favor of a transfer. *Brunswick*, 2000 WL 1876477 at *2. In bringing its motion, Yodlee bears a "heavy burden":

> Regardless of whether the plaintiff is leaving or remaining on his "home turf" to file suit in Delaware, the degree of consideration paid to this choice stays the same – it is "paramount." Consequently, the Court should not disturb this choice lightly. As a result, [defendants] bear a heavy burden in their motions for they must show that the "balance of convenience" tips strongly in favor of transfer.

*Affimetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 199-200 (D.Del. 1998).

Yodlee concedes that "a plaintiff's choice of forum is typically entitled to deference." Moreover, it is not "appropriate to disregard a plaintiff's choice of forum where it had a rational and legitimate reason for choosing the forum." *Stratos Lightwave, Inc., v. E20 Communications Inc.*, C.A. No. 01-309-

10

JJF, 2002 WL 500920, at *2 (D. Del. Mar. 26, 2002) (citing *Joint Stock Society v. Heublein, Inc.*, 936 F.

Supp. 177, 187 (D. Del. 1996)).  As the Court in *Stratos Lightwave* held:

> [T]he fact that [defendant] E20 has incorporated in Delaware is a rational and legitimate reason for choosing to sue E20 in Delaware. In fact, E20, having received the benefits of Delaware incorporation, should not now complain that another corporation has chosen to sue it here. Therefore, Stratos' forum preference, as well as E20's Delaware incorporation, weight in favor of maintaining this action in Delaware.

202 WL 500920, at *2 (citing *Critikon, Inc. v.. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962,

965 (D. Del. 1993)).  As in *Stratos Lightwave*, CashEdge had a legitimate reason to choose to file this

lawsuit in Delaware. CashEdge and Yodlee are both incorporated in Delaware and "Delaware

corporations should reasonably expect to litigate in this forum." *France Telecom S.A. v. Novell, Inc.*,

C.A. No. 02-437-GMS, 2002 WL 31355254, at *1 (D. Del. Oct. 17, 2002).

Yodlee argues that the plaintiff's choice of forum is outweighed by the interest of justice because

of the pending California action.  However, in the cases relied upon by Yodlee in support of this

proposition where the action was transferred away from the District of Delaware, at least one of the

patents-in-suit was already being asserted in the forum where the transfer was sought.  For example,

Yodlee admits that in *Brunswick* "the parties had previously litigated one of the patents-in-suit."

*Brunswick Corp. v. Precor, Inc.*, 2000 WL 1876477,.  Similarly, in *Nilssen*, Yodlee notes that the action

was transferred to a district "where the parties were already litigating at least six of the twenty-six

patents." *Nilssen v. OSRAM Sylvania, Inc.*, C.A. No. 00-695-JJF, U.S. Dist. LEXIS 25570 (D. Del. May

1, 2001). Likewise in *Altera*, Yodlee acknowledges that the related action involved "at least one common

patent that the parties had filed against one another." *Altera Corp. v. Xilinx, Inc.*, C.A. No. 95-242-JJF

(D. Del. Mar. 29, 1996).  Finally, in *Smithkline*, Yodlee also admits that in the related action "the parties

were already litigating the asserted patent." *Smithkline Corp. v. Sterling Drug, Inc.*, 406 F. Supp. 52 (D.

Del. 1975).  In contrast, the California action does not involve the same patent that has been asserted by

CashEdge in this action - or even any patents that relate to it. Thus, there is not the overlap of issues or possibility of inconsistent rulings that may have justified transfer in these other cases.[2]

2.    Defendants Preferred Forum is Irrelevant

Yodlee's stated "preference" is to have this case tried in the Northern District of California together with an action in which Yodlee claims infringement of its own patents. "The Court, however, affords no weight to [defendant's] mere preference to be elsewhere." *Affymetrix, Inc. v. Synteni, Inc,* 28 F. Supp. 2d at 201.[3] Further, irrespective of this precedent, Yodlee's contention that it would be "unduly expensive" to proceed with this action in the District of Delaware in part because "many of the same patents are common to the two cases" is simply incorrect. The Yodlee patents are only "common" to the present action to the extent that Yodlee has identified certain ones as relating to its charge of inequitable conduct. This is entirely different from a situation in which one or more of the asserted patents are being asserted in a prior separate action outside this District. Moreover, given that Yodlee is incorporated in Delaware and brought its own patent infringement action in this district only several years ago, any claim by Yodlee of undue burden rings hollow.

---

[2] Yodlee also relies heavily on an unrelated order from the *Yodlee, Inc. v. Block Financial Corporation and H&R Block, Inc.,* C.A. No. 03-600 JFF (D.Del. Aug 28, 2003) matter in which Yodlee unsuccessfully opposed a motion to transfer a patent infringement action it brought against Block Financial in the District of Delaware. The Court's Order, however, is not a judicial opinion and should not be cited by Yodlee as legal precedent. Moreover, from what can be gleamed from the telephonic transcript, that motion to transfer was based on a very specific set of facts not present here. For instance, Block Financial's counsel successfully argued that "the same prior art that's going to be litigated there [in the pending Missouri action] is going to be … necessary and important in the case that Yodlee brought against [Block Financial] … the issue of counter-aggregation is what makes these things nearly identical in terms of technology." See Yodlee Exhibit O. The Court in *Block Financial* also determined that "there is a largely common field of prior art." *Id.* In the present action, the prior art asserted against the Yodlee patents is not relevant to the '310 patent and Yodlee has not argued otherwise. Moreover, even though Yodlee claims that some of its patents are relevant to its charge of inequitable conduct in this action, what this Court would consider in addressing Yodlee's claim of inequitable conduct is altogether different from the tasks before Judge Illston in the Northern District of California concerning the Yodlee patents for the reasons addressed above. *See supra* at 1-2.

[3] Even though the Third Circuit in *Jumara* refers to "defendant's preference" as a factor that a court may consider in resolving transfer, precedent from this Court has recognized that "the 'defendants' preferred forum' collapses into other portions of the *Jumara* analysis" because "considering the fact that a defendant prefers a different forum simply for its own sake … risk still another double-counting by effectively considering this factor twice-first, simply because the defendant prefers another forum and second, when weighing the reason or reasons behind this preference in the "balance of convenience" analysis." *Affymetrix, Inc. v. Synteni, Inc,* 28 F. Supp. 2d at 201.

3.    The Claim Arose in Various Locations

Neither CashEdge nor Yodlee is a local or regional business that has targeted markets located only in the Northern District of California – nor does Yodlee argue otherwise. Indeed, quite the contrary, Yodlee represents that the clients employing its products and services include the "world's top financial institutions and portals, such as Ameriprise Financial, AOL, Bank of America, Fidelity, JPMorgan Chase, Merrill Lynch, MSN, and Wachovia." [Ex. 17]. As a consequence, the location of the infringement does not favor transfer of this case to the Northern District of California.

4.    The Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

Yodlee's size, resources and incorporation in Delaware provide strong reasons for this case to remain in Delaware. "A defendant's status as a Delaware corporation is a relevant factor to be considered in determining whether to grant a motion for a change of venue and has been since Congress adopted the change of venue statute in 1948." *ADE v. KLA Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001) (citing *Brown v. Insurograph Inc.*, 85 F. Supp. 328, 330 (D. Del. 1949)). "Consequently, absent some showing of unique or unexpected burden, a company should not be able to argue that litigation in its state of incorporation is inconvenient." *Id.* (citing *Wesley-Jessen Corp. v. Pilkington Visioncare*, Inc., 157 F.R.D. 215, 218 (D. Del. 1993)). Thus, Yodlee's incorporation in Delaware strongly weighs against a transfer of this case.

The size of Yodlee also matters. "Multi-million dollar corporations with interest and activities spanning the globe" cannot be heard to complain that litigating in Delaware imposes an economic burden on them. *Affymetrix, Inc. v. Synteni, Inc*, 28 F. Supp. 2d at 201. In this regard, Yodlee boasts that it has "amassed nearly seven million users, over $250 billion in aggregated assets across the network, and more than 100 clients, including the world's top financial institutions and portals." [Ex. 17]. Yodlee's size and resources clearly show that it is able to litigate this case in Delaware, which it has previously chosen as the forum to bring a patent infringement action against Block Financial only several years ago.

5.    The Convenience of the Witnesses is Neutral

"The conveniences of modern traveling and communication technology has made it more difficult to argue that litigating in a particular forum is inconvenient for the parties and witnesses." *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 706 (D. Del. 2001). "Therefore, to meet its burden [defendant] must establish that litigating this case in Delaware would impose a "unique or unusual burden" on [its] business operations." *Id.* (quoting *Joint Stock Society* v. *Heublein, Inc.*, 936 F. Supp. at 188-89).

Yodlee argues that because its headquarters are located in California, more witnesses are likely to be within the subpoena power of the Northern District of California Court that this Court. But as Yodlee concedes, the convenience of witnesses is considered only to the extent that the witnesses may actually be unavailable for trial in one of the districts. As the Federal Circuit has explained:

> [T]he witnesses to be called by the defendant are all its employees; thus their location is not as important a factor as it would be if they were not under the defendant's control and it would be forced to subpoena those witnesses and therefore require the Court to have jurisdiction over them.

*HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 n.2. (Fed. Cir. 1999). This is the law that is followed in this District, as evidenced by the Court's holding that "[p]arty witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed obligated, to procure the attendance of its own employees for a trial." *Affymetrix, Inc. v. Synteni, Inc*, 28 F. Supp. 2d. at 203. In the present case – a patent infringement action - most if not all of the witnesses called by the parties at trial will likely be employees of the parties, as well as technical and damages experts that will be within the control of the parties. Indeed, other than one of the four co-inventors on the '310 patent, the only other third party witness identified by Yodlee, patent attorney Steven Sponseller, is located in Spokane, Washington, outside the subpoena power of the Northern District of California.

Moreover, even if convenience of the parties or party witnesses were considered, this factor would not favor transfer because the District of Delaware is a more convenient location for CashEdge, which is headquartered in New York and whose trial counsel is in New York. Indeed, three out of the

four inventors named on the '310 patent are located in Connecticut or New York. Thus, to the extent that convenience of the parties is considered, this factor is neutral and should be given no weight in favoring transfer.

      6.     The Location of Books and Records Does Not Favor Transfer to The Northern District of California

"The technological advances of recent years have significantly reduced the weight of this factor in the 'balance of convenience' analyses." *Affymetrix, Inc. v. Synteni, Inc*, 28 F. Supp. 2d. at 205. In the context of venue and the convenience analysis, the location of records and documents is only relevant to the extent that the documents would be unavailable in one forum as opposed to the other. *Unicredito Italiano v. JP Morgan Chase Bank*, 2002 U.S. Dist. LEXIS 11535 (D. Del. June 26, 2002).

A significant number of documents will be located at CashEdge's headquarters in New York. Others might be located at Yodlee's office locations, including, but not limited to, its office in California. None of the documents will be unavailable in this forum as opposed to the Northern District of California. Thus, this factor does not favor transfer.

      C.     Public Interests Compel Retention of this Case

Yodlee all but concedes that the public interest factors in this instance are irrelevant and thus do not favor transfer except for the factor concerning "practical considerations that could make the trial easy, expeditious or inexpensive." To try to argue this factor favors transfer, Yodlee incorrectly characterizes the nine-patent litigation in Northern District of California as a closely related action, involving the "same products and features" as in the present case to try to argue that transfer would make for both cases easy, expeditious or inexpensive. In point of fact, the CashEdge '310 patent is wholly unrelated to the Yodlee patents asserted in the California action and the infringement and invalidity analysis in both actions are entirely different.

This action does not involve the same products and features. In the California action, the Court or jury will be comparing the relevant aspects of the accused CashEdge products to the construed claims

of the Yodlee patents. In this action, the Court or jury will be comparing the relevant aspects of the accused Yodlee products with the CashEdge product. With regard to validity, in the California action the specific claims of the Yodlee patents will be compared to the prior art identified by CashEdge which will involve showing that the claimed features of the Yodlee patents (e.g., "a notification alert system" for alerting subscribers a change in a data condition that meets a condition for notification) were known or described in the prior art identified by CashEdge. In contrast, Yodlee's challenges to the validity of the '310 patent will have to focus, for example, on whether the claimed methods and apparatus for extracting data from captured web pages and generating context-specific error codes if the data cannot be successfully extracted were taught in the prior art. Thus, the invalidity analysis, and even the relevant prior art, will be markedly different from that being addressed in the California action, notwithstanding Yodlee's contention that several of its patents are prior art to the claims of the '310 patent.

Similarly, because the '310 patent is unrelated to the Yodlee patents asserted in the California action, the proper construction of disputed terms of the '310 patent will have nothing to do with the Yodlee patents but will require consideration and analysis of the '310 patent's own intrinsic evidence, completely independent from the Yodlee patents and Judge Illston's claim construction rulings in that case.[4] Finally, though Yodlee attempts to make the California action seem relevant to this action by accusing CashEdge of inequitable conduct for not disclosing certain Yodlee patents asserted by Yodlee in the California action, the tasks being performed by the Court in that action are altogether different from the legal and factual questions to be resolved in addressing Yodlee's claim of inequitable conduct in this action. *See supra* at 1-2. Accordingly, the present situation is readily distinguished from cases relied upon by Yodlee in which motions to transfer were granted because at least one of the patents asserted in the Delaware patent infringement action was already being litigated the district where the transfer was sought.

---

[4] Indeed, it is telling that Yodlee has not identified any terms requiring construction in the '310 patent that would overlap with the terms of the nine Yodlee patents that are being construed by Judge Illston in the California action.

Thus, given that the California action and the present case are not "closely related" as Yodlee contends, its arguments with respect to the factor concerning "practical considerations that could make trial easy, expeditious or inexpensive" fail. For example, if the nine-patent California action were consolidated with the present action, there is a significant risk that adding at least six additional products of another party, an unrelated patent and additional unrelated infringement, invalidity and damages claims would render the trial unduly complex and overwhelming for a jury. Moreover, because the parties just completed the claim construction phase in the California action, adding an additional, unrelated patent and various newly accused products will only substantially delay that action, especially given the Northern District of California's extensive Local Patent Rules governing the claim construction process, which could not even begin until after the transfer.

Further, combining the present case and California action would not render trial inexpensive. Because the two cases are unrelated and would involve different legal and factual issues, it is unlikely there would be substantial overlap in witnesses who would attend trial and there will be little, if any, overlap in testimony that would be provided in both cases. For example, the set of inventors from the CashEdge '310 patent is different from the set of inventors from the Yodlee patents. Indeed, even if the parties retained some of the same experts to testify as to liability and damages issues for both cases, they would likely have to testify at least twice over the course of the trial to account for the fact that both plaintiff and defendant would be maintaining separate patent infringement claims against the other party.

Moreover, transferring the case without consolidating it would also undercut many, if not all, of Yodlee's arguments allegedly favoring transfer given that such newly transferred action would require its own schedule, its own separate *Markman* hearing and trial, and would not benefit from the issues decided in the unrelated from the pending California action. In short, because there would be minimal overlap between the legal and factual issues to be decided, transferring the case to the Northern District of California would not result in "making trial easy, expeditious or inexpensive." Accordingly, none of the

public interest factors weigh in favor of transfer and they certainly do not weigh strongly enough to

justify disturbing CashEdge's choice of forum for the present unrelated action.

VI.    CONCLUSION

For the foregoing reasons, CashEdge respectfully submits that Yodlee's motion to transfer be

denied.


Dated: May 24, 2006                    CONNOLLY BOVE LODGE & HUTZ LLP


                                       Arthur G. Connolly, III (No. 2667)
                                       The Nemours Building
                                       1007 North Orange Street
                                       Wilmington, Delaware 19899-2207
                                       (302) 658-9141

                                       Attorneys for Plaintiff



OF COUNSEL:

Drew M. Wintringham, III
Mark W. Rueh
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019 6131
(212) 878-8000

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 24, 2006, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF which will send notification of such filing

to the following counsel of record:

William J. Marsden, Jr., Esq.
Kyle Wagner Compton, Esq.
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19899


I FURTHER CERTIFY that on May 24, 2006 a copy of the foregoing document was

served upon the following counsel in the manner indicated:

<u>By Federal Express</u>:
David M. Barkan, Esq.
Craig R. Compton, Esq.
Fish & Richardson, P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063


  /s/Arthur G. Connolly, III
Arthur G. Connolly, III (#2667)

#460674_1