IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CASHEDGE, INC.,

           Plaintiff,

    v.                                           C.A. No. 06-170-JJF

YODLEE, INC.,

           Defendant.


**DEFENDANT YODLEE, INC.'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO TRANSFER**


**FISH & RICHARDSON P.C.**
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, Delaware 19899-1114
Telephone: (302) 652-5070

David M. Barkan (CA Bar #160825)
Craig R. Compton (CA Bar #215491)
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

Attorneys for Defendant
YODLEE, INC.


DATED: June 5, 2006

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   THE FACTUAL AND LEGAL OVERLAP BETWEEN THIS
ACTION AND THE NORTHERN DISTRICT OF
CALIFORNIA ACTION ARE COMPELLING AND NOT
REASONABLY IN DISPUTE. ...........................................................2

III.  ARGUMENT .......................................................................................6

     A.    The Interest of Justice is Served by Transferring Actions
to Other Jurisdictions Where Earlier-Filed, Related
Actions Between the Same Parties are Being Litigated...........................6

     B.    The Northern District of California Action is Closely
Related to This Action .............................................................8

     C.    The Interest of Justice Served by Transferring This Case
is not Outweighed by Any Public or Private Interest ..............................10

          1.    Plaintiff's Choice of Forum .............................................10

          2.    Defendant's Preferred Forum .........................................12

          3.    "Amenability to Suit in Delaware" .................................12

          4.    Other Factors Also Favor Transfer ..............................14

IV.  CONCLUSION...................................................................................14

# TABLE OF AUTHORITIES

<u>Page</u>

## CASES

*Affymetrix, Inc. v. Synteni, Inc.,*
    28 F. Supp. 2d 192 (D. Del. 1998).................................................10, 11, 12, 13

*Air Products & Chemicals, Inc. v. MG Nitrogen Services, Inc.,*
    133 F. Supp. 2d 354 (D. Del. 2001)......................................................, 11,13

*Altera Corp. v. Xilinx, Inc.,*
    C.A. No. 95-242-JJF (D. Del. Mar. 29, 1996) ......................................8, 11, 13

*American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.,*
    1999 WL 615175 (D. Del. Aug. 3, 1999) .....................................................6, 11

*Bayer AG v. Biovail Corp.,*
    C.A. No. 00-466-JJF (D. Del. July 17, 2000) .................................................11

*Bayer Bioscience N.V. v. Monsanto Co.,*
    2003 WL 1565864 (D. Del. Mar. 25, 2003) ...........................................7, 11, 13

*Brunswick Corp. v. Precor, Inc.,*
    2000 WL 1876477 (D. Del. Dec. 12, 2000)................................................ *passim*

*Continental Casualty Co. v. American Home Assurance Co.,*
    61 F. Supp. 2d 128 (D. Del. 1999)...................................................................11

*Ferring B.V. v. Barr Laboratories, Inc.,*
    437 F.3d 1181 (Fed. Cir. 2006)........................................................................10

*Green Isle Partners, Inc. v. The Ritz-Carlton Hotel Co.,*
    C.A. No. 01-202-JJF (D. Del. Nov. 2, 2001) ...................................................13

*Jumara v. State Farm Insurance Co.,*
    55 F.3d 873 (3d Cir. 1995)...............................................................................10

*Nilssen v. OSRAM Sylvania, Inc.,*
    C.A. No. 00-695-JJF (D. Del. May 1, 2001) ............................................11, 13

*Pacesetter, Inc. v. Cardiac Pacemakers, Inc.,*
    C.A. No. 96-232-SLR (D. Del. Sept. 25, 1996)...............................................11

*Pall Corp. v. Bentley Laboratories, Inc.,*
    523 F. Supp. 450 (D. Del. 1981).................................................................6, 11

*SAS of Puerto Rico, Inc. v. Puerto Rico Telegraph Co.,*
    833 F. Supp. 450 (D. Del. 1993)......................................................................13

*Smithkline Corp. v. Sterling Drug, Inc.,*
    406 F. Supp. 52 (D. Del. 1975).........................................................6, 7, 11, 13

ii

*Yodlee, Inc. v. Block Financial Corp.*,
  C.A. No. 03-600............................................................................7, 8, 11, 13

## STATUTES

37 C.F.R. § 1.56(b)(2)........................................................................10

## I.     INTRODUCTION

This Court has long recognized a strong public policy favoring litigation of related claims between the same parties before a single tribunal. Accordingly, this Court has adhered to the first-to-file precedent and transferred actions to jurisdictions where earlier-filed actions were being litigated. Here, Yodlee seeks transfer of the present case to the Northern District of California, where related litigation between Yodlee and CashEdge has been pending for over one year.

CashEdge attempts to avoid this precedent, arguing that transfer is only warranted where precisely the same patents are at issue. That position is inconsistent with the case law. Indeed, CashEdge takes liberties in reciting only the facts of cases purportedly supporting its position while ignoring the actual rulings of those cases. Further, CashEdge simply ignores other cases that directly contradict its position.

CashEdge also attempts to avoid transfer by characterizing the present action as having "little — if anything — to do with the . . . California action." CashEdge's position strains the imagination. The Northern District of California action involves nine patents that claim various aspects of data collection, aggregation, and summarization from Internet sources, such as websites. The patent-in-suit here also deals with those exact same technologies, adding only the concept of handling errors that might arise during the data collection process. Moreover, Yodlee's prior invention defense in this action is evidenced by documents and testimony that are the subject of discovery in the Northern District of California action. For example, Yodlee's prior invention of the subject matter of the '310 patent-in-suit (including the error handling features) is corroborated by a patent application Yodlee filed more than fifteen months before the '310 patent was filed; that patent application is a continuation-in-part from one of the patents being litigated in the Northern District of California action.[1] Similarly, the

---

[1] That patent application is a continuation-in-part of U.S. Patent No. 6,412,073 — one of the patents being litigated in the Northern District of California.

Yodlee products that embody the Northern District of California patents are the same products that further corroborate Yodlee's prior invention defense in this action. On top of all that, Yodlee's inequitable conduct defense in this litigation arises from the fact that CashEdge failed to disclose the very patents being litigated in the Northern District of California action while the '310 patent was being prosecuted. For CashEdge to say that the actions are unrelated strains the limits of reasonable advocacy.

Finally, CashEdge argues that public and private interest factors weigh against transfer of this case. However, the very cases that CashEdge cites demonstrate that the interest of justice served by having related actions between the same parties tried before a single tribunal outweighs other such factors.

Consistent with the strong policy favoring litigation of related claims between the same parties before a single tribunal, the Court should grant Yodlee's motion to transfer here.

## II.     THE FACTUAL AND LEGAL OVERLAP BETWEEN THIS ACTION AND THE NORTHERN DISTRICT OF CALIFORNIA ACTION ARE COMPELLING AND NOT REASONABLY IN DISPUTE.

CashEdge, the assignee of U.S. Patent No. 7,013,310 ("the '310 patent"), alleges that various Yodlee products[2] infringe the '310 patent. CashEdge then argues that its '310 patent is not at issue in the California action, and more generally, that the "focus of the technology" in the California action is "very different" from the '310 patent at issue here, albeit without explication.

---

[2]     Yodlee essentially offers its core platform, which has various features. "All Yodlee solutions are powered by a patented technology, known in the industry as Account Aggregation, which is built into the Yodlee Platform. This powerful Platform now powers financial service offerings for over 100 FSPs and more than 6 million consumers, processing millions of account updates daily in a highly secure, scalable, reliable way." [*See* Ex. P]. CashEdge's characterization that multiple Yodlee products are at issue in this matter is misleading — Yodlee's core platform is at issue in both matters.
All Exhibits that Yodlee filed with its Opening Brief are referenced by their same letter designation. Exhibits that are first presented in this Reply Brief are attached to the Declaration of Kyle Wagner Compton and begin with the letter P.

2

A review of CashEdge's '310 patent and the Yodlee patents asserted in the Northern District action shows that there is significant overlap in the disclosed technologies. For example, CashEdge's '310 patent discloses subject matter much broader than the error notification feature that CashEdge emphasizes: "The present invention relates to the retrieval and processing of data collected from web pages and/or other data sources." [Ex. C ('310 patent) at column 1:6-9]; "The systems and methods described herein automatically extract data from web pages and other data sources associated with various institutions. The data is extracted from a data source, such as a web page, using a data harvesting script or other data extraction/data acquisition routine." [*Id.* at column 1:54-58]; "A particular embodiment captures a web page from an institution's web site. Data is extracted from the web page using a data harvesting script. The extracted data is then normalized and stored in a database." [*Id.* at column 1:66-2:2].

Comparing CashEdge's disclosure to some of the Yodlee patents further demonstrates the technological overlap. For example, Yodlee's '077 patent, which relates to retrieval of data from Internet data sources, discloses "the summary software agent accesses the internet destinations, retrieves information according to pre-programmed criteria, and summarizes the retrieved information for delivery to the subscriber." [Ex. E ('077 patent) at column 2:64-67]. Yodlee's '783 patent also discloses closely related technology: "The invention relates to an apparatus and process for automated aggregation and delivery of electronic personal information or data." [Ex. D ('783 patent) at column 1:23-35]; "The processor supports the aggregation of personal information. The processor selects an end user for personal information aggregation. Once the end user is selected, the processor connects with one or more information providers. The processor then proceeds to retrieve personal information for the selected end user from the connected information providers." [*Id.* at column 3:24-33]

CashEdge also dismisses Yodlee's specifically-pled allegation of inequitable conduct in CashEdge's prosecution of the '310 patent as an "ungrounded" attempt to

3

make the California action appear related to this action.  Yodlee's allegation, however, is supported by documentary evidence of CashEdge's awareness of relevant prior art to the '310 patent — namely, Yodlee's '077 and '783 patents.  Yodlee sent a letter on November 17, 2004, more than one year before the '310 patent issued, to Sanjeev Dheer, one of the inventors of the '310 patent and the CEO of CashEdge, informing CashEdge of the '077 and '783 patents.  [Ex. G].

Yodlee's inequitable conduct defense is further supported by documentary evidence of arguments for patentability CashEdge made before the U.S. Patent and Trademark Office, distinguishing the subject matter of its application over a prior art reference cited by the Examiner.  In its Response To Office Action Dated October 6, 2004, filed on March 24, 2005, CashEdge argued specifically that the prior art did not show extraction of data from a web page:

> In particular, the cited portion of Reuning fails to mention "capturing a web page from a web site," "extracting data from the web page using a data harvesting script," and "normalizing the extracted data with data extracted from other web pages."  The cited language in Reuning mentions receiving email messages, extracting email addresses from the received email messages and forwarding (or replying to) email messages.  This disclosure of Reuning fails to make any mention of the elements of claim 1.  For example, <u>the cited language fails to mention capturing a web page from a web site,</u> as recited in claim 1.  Capturing a web page from a web site is not the same as receiving an email message.  Web pages and email messages are very different objects.  Further, <u>the cited language fails to mention extracting data from the web page using a data harvesting script, as recited in claim 1.</u>  Since the cited language of Reuning fails to mention capturing a web page, it further fails to mention extracting data from the web page.  Identifying an address in an email message is not the same as extracting data from a web page using a data harvesting script.

[Ex. Q at 13 (emphasis added)].  CashEdge did not distinguish this prior art based on error-handling alone; it focused specifically on the data retrieval elements of its claims. CashEdge made these arguments before the Patent Office several months after having been informed of the '783 and '077 patents, which disclose retrieval of data from web

pages. In fact, the '077 patent even calls out "extraction" as a specific part of the claimed

data retrieval process:

> What is claimed is:
> 1. An Internet Portal comprising:
> an Internet-connected server;
> a list of addresses of Internet sites associated with a specific person, which
>     sites store information specific to the person; and
> a software suite executing on the server, the software suite including a set
>     of gathering spitware agents, with at least one gatherer agent dedicated
>     to each of the Internet sites;
> wherein the Portal accomplishes a gathering cycle by accessing individual
>     ones of the Internet sites, authenticating too each site accessed as the
>     person, and the gathering agent dedicated to each site accessed <u>extracts</u>
>     <u>data from that site</u>.

[Ex. E ('077 patent) at column 18:2-15 (emphasis added)].

As set forth more fully in Yodlee's Answer to CashEdge's Complaint, D.I. No. 5

at ¶¶ 20-24, CashEdge had an obligation to disclose prior art to the Patent Examiner

during the prosecution of the '310 patent. Nevertheless, even though CashEdge was

indisputably aware of the '783 and '077 patents, and even though CashEdge viewed

capturing web sites and data extraction as a critical feature of its purported invention, it

did not disclose the Yodlee patents to the Examiner.

CashEdge further attempts to downplay the similarities between the technologies

at issue in this action and the Northern District action by reciting the titles of the patents

which are, naturally, dissimilar. The actual functions of those patents, however, are quite

similar. CashEdge's '310 patent and all of the patents-in-suit in the Northern District

action relate generally to accessing, retrieving and manipulating data from web sites or

other computer network sources. CashEdge's '310 patent and Yodlee's '783 and '077

patents are even more closely related, all focusing on retrieval of data from web pages.

CashEdge argues that its '310 patent is directed to "problem solving techniques of

generating context-specific error codes and analyzing a web page to determine why data

could not extracted [sic] when data cannot be obtained from a web page." However, as

CashEdge admits, the '310 patent is still within the common technological field of data extraction. Yodlee's comparison, detailed above, of the disclosures of CashEdge's '310 patent and at least Yodlee's '077 and '783 patents demonstrates that the disclosed technologies are in fact closely related.

Finally, CashEdge glosses over the fact that the Yodlee products it accuses of infringement in this action embody the patents Yodlee is asserting in the Northern District action. The converse is likely also true: the CashEdge products that Yodlee alleges infringe its patents in the Northern District action will likely be relied upon by CashEdge in this action as allegedly embodying CashEdge's '310 patent. In short, both actions involve the same field of technology, the same products, and overlapping prior art.

## III.    ARGUMENT

### A.    The Interest of Justice is Served by Transferring Actions to Other Jurisdictions Where Earlier-Filed, Related Actions Between the Same Parties are Being Litigated

This Court has long recognized "the strong policy favoring the litigation of related claims before the same tribunal." *Smithkline Corp. v. Sterling Drug, Inc.*, 406 F. Supp. 52, 55 (D. Del. 1975). Accordingly, the interest of justice is served by transferring actions to other jurisdictions where earlier-filed, related actions between the same parties are being litigated. *Brunswick Corp. v. Precor, Inc.*, 2000 WL 1876477, * 3 (D. Del. Dec. 12, 2000) ("Where related lawsuits exist, 'it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court.'"); *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*, 1999 WL 615175, *5 (D. Del. Aug. 3, 1999) ("Motions to transfer venue are granted as well if there is a related case which has been filed first or otherwise is the more appropriate vehicle to litigate the issues between the parties."); *Pall Corp. v. Bentley Labs., Inc.*, 523 F. Supp. 450, 453 (D. Del. 1981). In each of the above-cited cases, this Court granted a motion to transfer an action to a jurisdiction where an earlier-filed, related patent infringement case was being

6

litigated by the same parties. Those cases strongly support transfer of this action to the Northern District of California.

CashEdge does not directly dispute the well-established precedent supporting transfer of later-filed actions between the same parties to courts where related litigation is already pending. Instead, CashEdge attempts to avoid the clear implications of that precedent, arguing that the cases Yodlee cites support a rule that transfer is permitted only when "at least one of the patents-in-suit was already being asserted in the forum where the transfer was sought." *See* CashEdge's Brief in Opposition to Transfer, D.I. No. 19 at 11-12.

CashEdge's argument is inconsistent with the holdings of the cases it cites. *Smithkline* states that "related claims" are to be tried before the same tribunal; it does not state that transfer is warranted only when the same patents are at issue in both tribunals. 406 F.Supp. at 55. Similarly, the *Brunswick* decision states that "suits involving the same parties and issues," not suits involving the same patents, should proceed before one court. 2000 WL 1876477 at *3. Notably, the pending litigation in the transferee forum in *Brunswick* did not involve the same patent-in-suit as the action that was transferred. *Id.* (emphasis added).

CashEdge simply ignores or dismisses two other cases that directly oppose its proposed rule permitting transfer only when the same patents-in-suit are at issue in related litigation, even though Yodlee cited both of those cases in its Brief in Support of its Motion to Transfer. In *Bayer Bioscience v. Monsanto Co.*, this Court granted transfer of a patent infringement action to the Eastern District of Missouri, where the parties had been litigating four patents in a field of technology related to the patent-in-suit, even though the patent-in-suit in the transferred action was not being litigated in the transferee forum. 2003 WL 1565864 (D. Del. Mar. 25, 2003). Similarly, in *Yodlee v. Block Financial Corp.*, this Court transferred a patent infringement action to the Western District of Missouri, where the parties had been litigating technologically similar patents,

7

but not the same patents that were asserted in the action which was transferred. C.A. No. 03-600 JFF (D. Del. Aug. 28, 2003) [Ex. M].[3]  In that case, Your Honor explicitly noted that transfer was warranted because the technology at issue was related, even though the same patents were not at issue:

> "I find that the interests of justice weigh heavily on the side of a transfer. And among the reasons that I find support that conclusion is that there are, as in any patent case, complex legal issues which, although not precisely overlapping, are affected and related between the two cases, the case filed here in Delaware and the Missouri case, and that these issues should be decided in a consistent manner, particularly where the same parties are involved in related technology or closely related technology."

[Ex. O at 9:3-12].

## B.     The Northern District of California Action is Closely Related to This Action

CashEdge argues that transfer of this action should not be granted because it is unrelated to the pending action in the Northern District of California, and thus transfer would not make this action "easy, expeditious or inexpensive." CashEdge also blithely states that the '310 patent is not related to the patents at issue in the Northern District action, and thus this action should not be transferred because tasks required of the Court in the Northern District action are not the same as tasks required of the Court in this action. CashEdge both misstates the similarity of the technology at issue in the two actions, and misapprehends the law governing motions to transfer.

As noted above, while the patents at issue in this action and the Northern District action are not identical, the field of technology is closely related, and the law does not require that the same patents be at issue in order for transfer to be granted. Further, as discussed, Yodlee's claim of inequitable conduct is a real issue supported by

---

[3]     CashEdge objects to Yodlee's citation of the Court's unreported order in *Yodlee v. Block Financial Corp*. *See* CashEdge's Brief in Opposition to Transfer, D.I. No. 19 at 12 n.2. However, unreported orders and decisions are routinely cited and relied upon in this Court. Moreover, CashEdge does not hesitate to cite unpublished dispositions to support its own arguments. *See Id.* at 11 (citing *Altera Corp. v. Xilinx, Inc.*, C.A. No. 95-242-JJF).

8

documentary evidence, that will require examination of the same patents at issue in both cases. Also, Yodlee has alleged in its answer that the '310 patent is invalid based on Yodlee's earlier product releases — that same product is the subject of discovery in the Northern District action. *See* Yodlee's Answer to CashEdge's Complaint, D.I. No. 5 ¶¶ 17-19. Yodlee's invalidity defense in this case will show that Yodlee's patents-in-suit are prior art to the '310 patent. *Id.* at ¶ 16. Furthermore, Yodlee filed a patent application in September of 2000 (a continuation-in-part of the '073 patent, which is part of the Northern District Action) that documents Yodlee's prior invention to CashEdge's '310 patent. *Id.* at ¶ 19. Contrary to CashEdge's assertions, this action is legally and factually intertwined with the Northern District action, and the interests of justice will best be served by transferring this action so that all issues may be resolved by a single tribunal.

Indeed, even where CashEdge tries to argue that certain legal issues will be different in the two forums, it misses the mark logically and omits key facts in the existing record. For example, CashEdge focuses on claim construction as an issue that it claims is dissimilar between the two actions. Yet CashEdge fails to note the overlapping terminology between the patents — including terms on which Judge Illston will render a claim construction. As noted above, claim 1 of Yodlee's '077 patent recites a feature that "extracts data" from a web site. Claim 1 of CashEdge's '310 patent similarly recites "extracting data" from a web site. Construction of that term as used in the '077 patent has already been considered in the Northern District action. [Ex. R at 17]. Construction of that term will be required in this case as well, particularly given CashEdge's focus on data "extraction" during prosecution of the '310 patent.

CashEdge similarly ignores the legal framework underlying the inequitable conduct defenses that will require this Court to analyze the same disclosures in three Yodlee patents that are already being analyzed by Judge Illston. In connection with inequitable conduct, this Court will have to determine the materiality of the '077, '783 and '073 patents to the '310 patent in this case. Materiality of withheld prior art

9

references is central to the inequitable conduct analysis. *See, e.g., Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1186 (Fed. Cir. 2006). Under 37 C.F.R. § 1.56(b)(2), information is material to patentability when it is not cumulative to information already of record and "it refutes, or is inconsistent with, a position the applicant takes in: (i) opposing an argument of unpatentability relied on by the Office, or (ii) asserting an argument of patentability." The materiality determination required in this action will involve detailed analysis of the specifications of the '077, '783, and '073 patents — something that Judge Illston is currently doing in the context of claim construction in the Northern District action.

In short, Judge Illston is currently devoting substantial judicial resources to understanding the technology that underlies both actions, and to understanding the meaning of specifications of the Yodlee patents. In addition, since discovery between these cases will necessarily overlap because the exact same products are at issue (Yodlee's core platform and CashEdge's core platform), it makes sense to have one Court resolve any potential discovery disputes. Unquestionably, judicial economy and consistency will be served by having one Court hear these closely related matters.

C.    **The Interest of Justice Served by Transferring This Case is not Outweighed by Any Public or Private Interest**[4]

1.    **Plaintiff's Choice of Forum**

CashEdge emphasizes that a plaintiff's choice of forum is given deference when considering a motion to transfer, citing case law suggesting that the plaintiff's choice of forum is a "paramount" consideration that is not to be "lightly disturbed," *Brunswick Corp. v. Precor, Inc.*, 2000 WL 1876477, at *2 (D. Del. Dec. 12, 2000), and that a defendant seeking to transfer an action out of a plaintiff's chosen forum bears a "heavy burden." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 199-200 (D. Del. 1998).

---

[4]    CashEdge's arguments concerning public and private interest factors roughly tracks the discussion of relevant factors in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995).

10

Although Yodlee acknowledges that a plaintiff's choice of forum is entitled to deference, the very cases that CashEdge cites in support of this principal demonstrate that the "heavy burden" is overcome when transfer is sought to a jurisdiction where an earlier-filed action between the same parties is pending. In *Brunswick*, while noting that "a plaintiff's forum is a 'paramount' consideration that is not to be 'lightly disturbed,'" 2000 WL 1876477, at *2, this Court nevertheless <u>granted</u> the defendant's motion to transfer to the Western District of Washington because the parties were "litigating another patent infringement matter involving exercise equipment" in that District. *Id.* at *3. Similarly, in *Affymetrix*, after explicitly acknowledging that the importance of the plaintiff's choice of forum is "paramount" and that the defendants bore a "heavy burden" in seeking transfer, 28 F.Supp.2d at 199-200, this Court nevertheless <u>granted</u> the defendants' motion to transfer, in part because "the Court believes that transferring the two actions to the northern District of California where another suit filed by [the plaintiff] is pending may achieve a certain degree of judicial economy." *Id.* at 209.[5]

In addition to the *Brunswick* and *Affymetrix* cases, this Court has found earlier-filed, related litigation between the same parties sufficient to carry the "heavy burden" in favor of transfer in many other cases.[6]

---

[5] The *Affymetrix* Court also found that the location of witnesses outside of the Court's subpoena power, and reduction of costs to the parties (in part by eliminating the need for local counsel) were factors favoring transfer. 28 F.Supp.2d at 208-209. Because neither Yodlee nor CashEdge maintains an office in Delaware, or within one hundred miles of the District Courthouse in Wilmington, those factors also support transfer here.

[6] *See, e.g., Bayer Bioscience N.V. v. Monsanto Co.,* 2003 WL 1565864 (D. Del. Mar. 25, 2003); *Yodlee, Inc. v. Block Financial Corp.,* C.A. No. 03-600 JFF (D. Del. Aug. 28, 2003) [Ex. M ]; *Nilssen v. OSRAM Sylvania, Inc.,* C.A. No. 00-695-JJF (D. Del. May 1, 2001) [Ex. K]; *Air Products & Chemicals, Inc. v. MG Nitrogen Services, Inc.,* 133 F.Supp.2d 354 (D. Del. 2001); *Bayer AG v. Biovail Corp.,* C.A. No. 00-466-JJF (D. Del. July 17, 2000) [Ex. J ]; *American Bio Medica Corp.,* 1999 WL 615175 (D. Del. Aug. 3, 1999); *Continental Casualty Co. v. American Home Assurance Co.,* 61 F. Supp.2d 128 (D. Del. 1999); *Pacesetter, Inc. v. Cardiac Pacemakers, Inc.,* C.A. No. 96-232-SLR (D. Del. Sept. 25, 1996) [Ex. S]; *Altera Corp. v. Xilinx, Inc.,* C.A. No. 95-242-JJF (D. Del. Mar. 29, 1996) [Ex. N ]; *Pall Corp.,* 523 F. Supp. 450 (1981); *Smithkline Corp.,* 406 F. Supp. 52 (1975).

### 2.    Defendant's Preferred Forum

CashEdge next argues that Yodlee's preference to have this case tried in the Northern District of California is afforded no weight in the transfer analysis. CashEdge again cites *Affymetrix* for the proposition that "[this] Court . . . affords no weight to [defendants'] mere preference to be elsewhere." 28 F.Supp.2d at 201. That language, cited out of context, suggests an absolute disregard for the defendant's choice of forum. The Affymetrix Court goes on to explain that while preference itself carries no weight, "the reason or reasons behind [the defendant's] preference" are important considerations in the transfer analysis. *Id.* Here, Yodlee's preference for trying this case in the Northern District of California is rationally based on the pendency of a related action and the physical presence of both parties in that judicial district. Moreover, even to the extent that the *Affymetrix* court discounted the defendants' preference of forum, it nevertheless granted the defendants' motion to transfer, in part for the same reasons that Yodlee prefers trying this case in the Northern District of California. *Id.* at 208-209.

### 3.    "Amenability to Suit in Delaware"

CashEdge makes related arguments with respect to its own forum preference and "the convenience of the parties indicated by their relative physical and financial conditions."[7] Essentially, CashEdge argues that both parties are amenable to suit in this Court by virtue of their incorporation in Delaware and their financial condition. As an initial matter, Yodlee does not deny that it is amenable to suit in this Court. Yodlee argues only that the interest of justice will be best served by transferring this case to the Northern District of California, and CashEdge's arguments do not support a contrary conclusion.

---

[7]    CashEdge mischaracterizes Yodlee's financial strength by noting that it has over $250 billion in aggregated assets across the network. *See* CashEdge's Brief in Opposition to Transfer, D.I. No. 19 at 13. All this statement means is that Yodlee retrieves and collects data on behalf of its customers whose aggregated assets total that amount. Yodlee is not a multi-billion dollar company. Yodlee remains a relatively small, privately held company.

12

CashEdge argues that, as a Delaware corporation, it has a legitimate reason to file suit in Delaware, and that Yodlee, as a Delaware corporation, should reasonably expect to be sued in Delaware. A party's incorporation in Delaware, however, will not prevent transfer. *See, e.g., Nilssen v. OSRAM Sylvania, Inc.*, C.A. No. 00-695-JJF, Mem. Op. at 5 (D. Del. May 1, 2001) ("The mere fact that a defendant is incorporated in a given forum does not mean that transfer to another forum is unwarranted.") (citations omitted) [Ex. K]; *Green Isle Partners, Inc. v. The Ritz-Carlton Hotel Co.*, C.A. No. 01-202-JJF, Mem. Op. at 6 (D. Del. Nov. 2, 2001) ("[W]here a defendant can demonstrate that an alternative forum would be more convenient and would better serve the interests of justice, because that forum has substantial connections with the litigation, incorporation in Delaware will not prevent transfer.") [Ex. L]; *SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*, 833 F. Supp. 450, 452-53 (D. Del. 1993) (same). Moreover, this Court has not hesitated to transfer cases involving Delaware corporations when warranted.[8]

CashEdge further argues that Yodlee, as a "multi-million dollar corporation[] with interests and activities spanning the globe," cannot be heard to complain that litigating in Delaware imposes an economic burden, citing *Affymetrix*, 28 F.Supp.2d at 202. Yodlee does not contend that it is unable to litigate in Delaware; it contends that the interest of justice will be best served by transferring this case to the Northern District of California. Indeed, CashEdge's reliance on *Affymetrix* is peculiar in this case because the *Affymetrix* decision *granted* the motion to transfer and even noted that: "by transferring these two cases to the Northern District of California, the Court would, to some extent, convenience all of the parties since they are all located in Silicon Valley." *Id.* Notably, the same is true here. Both CashEdge and Yodlee maintain offices in Silicon Valley.

---

[8] *See, e.g., Yodlee v. Block Financial*, C.A. No. 03-600 JFF [Ex. M]; *Air Products*, 133 F.Supp.2d 354; *Brunswick Corp.*, 2000 WL 1876477; *Bayer Bioscience v. Monsanto*, 2003 WL 1565864; *Nilssen v. OSRAM Sylvania, Inc.*, C.A. No. 00-695-JJF [Ex. K]; *Affymetrix*, 28 F.Supp.2d 192; *Altera Corp. v. Xilinx, Inc.*, C.A. No. 95-242-JJF [Ex. N]; *Smithkline Corp.*, 406 F.Supp. 52.

13

4.    **Other Factors Also Favor Transfer**

CashEdge concedes that the convenience of witnesses is neutral. Yodlee further
notes that while there appear to be no witnesses within the subpoena power of this
District, there is at least one inventor of the '310 patent and likely former CashEdge and
Yodlee employees that still reside in the Northern District of California. CashEdge
argues that the location where the claims arose and the location of books and records do
not favor transfer. Yodlee simply notes that production has already commenced in the
Northern District proceeding and it makes sense to have one Court oversee the discovery
process. Therefore, these factors also favor transfer.

IV.    **CONCLUSION**

For the reasons set forth above, the interest of justice would best be served by
transferring this action to the Northern District of California where a related action
between the same parties is pending. Accordingly, Yodlee's motion to transfer should be
granted.

Dated: June 4, 2006                    FISH & RICHARDSON P.C.


By:  */s/ Kyle Wagner Compton*
     William J. Marsden, Jr. (#2247)
     Kyle Wagner Compton (#4693)
     919 N. Market Street, Suite 1100
     P. O. Box 1114
     Wilmington, DE 19899-1114
     Telephone: (302) 652-5070

     David M. Barkan (CA Bar #160825)
     Craig R. Compton (CA Bar #215491)
     500 Arguello Street, Suite 500
     Redwood City, CA 94063
     Telephone: (650) 839-5070

     Attorneys for Defendant
     YODLEE, INC.

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 5, 2006, I electronically filed with the Clerk of Court

**Defendant Yodlee, Inc.'s Reply Brief in Support of Its Motion to Transfer** using

CM/ECF which will send electronic notification of such filing(s) to the below-listed

Delaware counsel.  In addition, the filing will also be sent via hand delivery:

| | |
|---|---|
| Arthur G. Connolly, Jr., Esquire<br>Connolly Bove Lodge & Hutz LLP<br>The Nemours Building<br>1007 North Orange Street<br>P.O. Box 2207<br>Wilmington, DE  19899 | *Attorneys for Plaintiff*<br>*CashEdge, Inc.* |

I hereby certify that on June 5, 2006, I have mailed by Federal Express Overnight

Mail, the document(s) to the following non-registered participants:

| | |
|---|---|
| Drew M. Wintringham, Esquire<br>Mark Rueh, Esquire<br>Clifford Chance US LLP<br>31 West 52nd Street<br>New York, NY  10019-6131 | *Attorneys for Plaintiff*<br>*CashEdge, Inc.* |

*/s/ Kyle Wagner Compton*
Kyle Wagner Compton

80033755.doc

15