IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CASHEDGE, INC., <br><br> Plaintiff, <br><br> v. <br><br> YODLEE, INC., <br><br> Defendant. | C.A. No. 06-170-JJF |

**DECLARATION OF KYLE WAGNER COMPTON IN SUPPORT OF
DEFENDANT YODLEE, INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO TRANSFER**

I, Kyle Wagner Compton, declare as follows:

1. I am an Associate with Fish & Richardson P.C., counsel for Defendant Yodlee, Inc. ("Yodlee"). I make the following statements based on personal knowledge, except where noted.

2. Attached to this declaration as Exhibit P is a true and accurate copy of Yodlee's "Technology Overview" web page.

3. Attached to this declaration as Exhibit Q is a true and accurate copy of Plaintiff CashEdge, Inc.'s ("CashEdge") Response to Office Action dated October 6, 2004, filed on March 24, 2005, with the U.S. Patent and Trademark Office.

4. Attached to this declaration as Exhibit R is a true and accurate copy of excerpts of the Revised Joint Claim Construction and Prehearing Statement Pursuant to Patent Local Rule 4-3, filed on March 13, 2006, in the Northern District of California.

5.      Attached to this declaration as Exhibit S is a true and accurate copy of the Memorandum Order in *Pacesetter, Inc. v. Cardiac Pacemakers, Inc.*, C.A. No. 96-232-SLR (D. Del. Sept. 25, 1996).

I declare under penalty of perjury that the foregoing is true and accurate. Executed on June 5, 2006, in Wilmington, Delaware.

/s/ *Kyle Wagner Compton*
Kyle Wagner Compton (#4693)

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2006, I electronically filed with the Clerk of Court the attached **DECLARATION OF KYLE WAGNER COMPTON IN SUPPORT OF DEFENDANT YODLEE, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER** using CM/ECF which will send electronic notification of such filing(s) to the below-listed Delaware counsel. In addition, the filing will also be sent via hand delivery to:

Arthur G. Connolly, Jr., Esquire  *Attorneys for Plaintiff*
Connolly Bove Lodge & Hutz LLP  *CashEdge, Inc.*
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899

I hereby certify that on June 5, 2006, I have mailed by Federal Express Overnight Mail, the document(s) to the following non-registered participants:

Drew M. Wintringham, Esquire  *Attorneys for Plaintiff*
Mark Rueh, Esquire  *CashEdge, Inc.*
Clifford Chance US LLP
31 West 52nd Street
New York, NY  10019-6131

/s/ *Kyle Wagner Compton.*
Kyle Wagner Compton (#4693)

P

SOLUTIONS | TECHNOLOGY | CUSTOMERS | COMPANY





# TECHNOLOGY OVERVIEW

Yodlee Platform >>
   Overview
   Key Components

How it Works

Security Overview

## TECHNOLOGY OVERVIEW

Yodlee, Inc. was founded in 1999 with a vision to provide compelling, personalized consumer financial solutions to Financial Services Providers (FSP's), such as banks, brokerages, and portals. Operating predominantly as an Application Service Provider (ASP), Yodlee has integrated with - and provides services for - most of the leading FSP's, including AOL, Bank of America, Charles Schwab, Chase, Fidelity, Merrill Lynch, MSN, and Wachovia.

All Yodlee solutions are powered by a patented technology, known in the industry as Account Aggregation, which is built into the Yodlee Platform. This powerful Platform now powers financial service offerings for over 100 FSPs and more than 6 million consumers, processing millions of account updates daily in a highly secure, scalable, reliable way.



contact us | careers | press room

© 2006 Yodlee, Inc.



MAR 24 2005 09:58 FR LEE - HAYES  PLL    509 323 8979 TO 17038729306        P.04/27

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Application Serial No. | 10/040,314 |
| Filing Date | Jan. 3, 2002 |
| Inventor | Messing et al. |
| Group Art Unit | 2161 |
| Examiner | Al-Hashemi, Sana A |
| Attorney's Docket No. | CE1-005US |

Title: Method and Apparatus for Retrieving and Processing Data

## RESPONSE TO OFFICE ACTION DATED OCTOBER 6, 2004

RECEIVED
CENTRAL FAX CENTER

MAR 2 4 2005

To:     Commissioner for Patents
        P.O. Box 1450
        Alexandria, VA 22313-1450

From:   Steven R. Sponseller (Tel. 509-324-9256; Fax 509-323-8979)
        Lee & Hayes, PLLC
        421 W. Riverside Ave., Suite 500
        Spokane, WA 99201

lee&hayes pllc    509-324-9256                1                Application Serial No. 10/040,314

PAGE 4/27 * RCVD AT 3/24/2005 12:38:10 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/0 * DNIS:8729306 * CSID:509 323 8979 * DURATION (mm-ss):06-58

MAR 24 2005 10:00 FR LEE - HAYES  PLL   509 323 8979 TO 17038729306      P.15/27

Claim 1, as amended, recites:

> A method comprising:
> capturing a web page from a web site;
> extracting data from the web page using a data harvesting script;
> normalizing the extracted data with data extracted from other web pages;
> generating a context-specific error code if the data harvesting script fails to successfully extract data from the web page;
> adapting the data harvesting script based on identified changes to the web page; and
> storing the normalized data in a database.

In rejecting claim 1, the current Office Action cites column 5, lines 37-42, 43-46 and 52-60 of the Reuning reference (see page 2 of the current Office Action). The language at column 5, lines 37-60 of Reuning states:

> To provide for a means of organized reference and procedure manuals, during communication regarding the process and descriptions the individual general purpose computers are labeled as follows: chaser 101, chaser 102, chaser 103, chaser 104, chaser 105, chaser 106, chaser 107, chaser 108, chaser 109, chaser 110.
> Chaser 101 is used to receive mail forwarded from chaser 110. Chaser 110 forwards certain pieces of received mail to chaser 101 so that a program installed on chaser 101 can extract the address from the any received message then store the address in a text file so that it may be imported at another time into a file labeled the "remove file" that is referred to later in the process. Chaser 101 is programmed to use an Internet connection to a mail server so it may download electronic mail messages sent to said server by chaser 110. A software computer program called "Replyman" manufactured by ExtractorPro (see Prior Art Document #7) is installed on chaser 101 and serves the purpose to extract the addresses from the downloaded messages and store them into a text file. It is not required that the software "Replyman" be used to execute this process. A programmer experienced in this technology could write a simple program

lee@hayes pllc   509-324-9256                12              Application Serial No. 10/040,314

PAGE 15/27 * RCVD AT 3/24/2005 12:39:10 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/0 * DNIS:8729306 * CSID:509 323 8979 * DURATION (mm-ss):06:58

MAR 24 2005 10:00 FR LEE - HAYES PLL    509 323 8979 TO 17038729306    P.16/27

to perform this task using any of an assortment of language compilers such as C, Basic, Assembler, or Cobol.

The Office Action fails to provide any explanation as to the relevance of the above-cited language. Although the cited language mentions extracting an address from an email message, the above language fails to disclose the elements of claim 1.

In particular, the cited portion of Reuning fails to mention "capturing a web page from a web site", "extracting data from the web page using a data harvesting script", and "normalizing the extracted data with data extracted from other web pages". The cited language in Reuning mentions receiving email messages, extracting email addresses from the received email messages and forwarding (or replying to) email messages. This disclosure of Reuning fails to make any mention of the elements of claim 1. For example, the cited language fails to mention capturing a web page form a web site, as recited in claim 1. Capturing a web page from a web site is not the same as receiving an email message. Web pages and email messages are very different objects. Further, the cited language fails to mention extracting data from the web page using a data harvesting script, as recited in claim 1. Since the cited language of Reuning fails to mention capturing a web page, it further fails to mention extracting data from the web page. Identifying an address in an email message is not the same as extracting data from a web page using a data harvesting script.

Additionally, the Reuning reference fails to disclose "generating a context-specific error code if the data harvesting script fails to successfully extract data from the web page" and "adapting the data harvesting script based on identified

lee@hayes pllc    509-324-9256    13    Application Serial No. 10/040,314

PAGE 16/27 * RCVD AT 3/24/2005 12:38:10 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/0 * DNIS:8729306 * CSID:509 323 8979 * DURATION (mm-ss):06-58

changes to the web page", as recited in amended claim 1. Applicant respectfully submits that Reuning fails to make any reference to generation of a context-specific error code or the adapting of the data harvesting script based on web page changes.

Finally, the cited language of Reuning fails to disclose normalizing the extracted data with data extracted from other web pages, as recited in claim 1. As discussed above, the cited language of Reuning fails to mention capturing or extracting data from a web page. Thus, the cited language of Reuning makes no mention of normalizing data extracted from various web pages. Accordingly, Reuning fails to disclose several of the elements of claim 1.

Thus, for at least these reasons, Applicant respectfully submits that claim 1 is allowable over the Reuning reference. Given that claims 4-8 depend from claim 1, Applicant respectfully submits that those claims are also allowable over the Reuning reference for at least the reasons discussed above.

Claim 12, as amended, recites:

> A method comprising:
> capturing a web page from a web site;
> attempting to extract data from the web page using a data harvesting script;
> if data cannot be extracted from the web page:
> removing pre-determined personal information from the captured web page;
> storing the captured web page without the personal information;
> analyzing the web page and the data harvesting script to determine why data could not be extracted from the web page; and
> adapting the data harvesting script based on the determination why data could not be extracted from the web page.

lee@hayes pllc    509·324·9256    14    Application Serial No. 10/040,314

PAGE 17/27 * RCVD AT 3/24/2005 12:38:10 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/0 * DNIS:8729306 * CSID:509 323 8979 * DURATION (mm-ss):06-58



1  Drew M. Wintringham, III (Pro Hac Vice)
   Mark W. Rueh (Pro Hac Vice)
2  CLIFFORD CHANCE US LLP
   31 West 52nd Street
3  New York, NY 10019-6131
   Telephone: (212) 878-8000
4  Facsimile: (212) 878-8375

5  Daniel R. Harris (State Bar No. 188417)
   Nancy K. Raber (State Bar No. 192744)
6  CLIFFORD CHANCE US LLP
   990 Marsh Road
7  Menlo Park, California 94025-1947
   Telephone: (650) 566-4300
8  Facsimile: (650) 566-4399

9  Attorneys for Defendant
   CASHEDGE, INC.
10

11 David M. Barkan (CSB No. 160825/barkan@fr.com)
   Craig R. Compton (CSB No. 215491/compton@fr.com)
12 FISH & RICHARDSON P.C.
   500 Arguello Street, Suite 500
13 Redwood City, CA 94063
   Telephone: (650) 839-5070
14 Facsimile: (650) 839-5071

15 Attorneys for Plaintiff
   YODLEE, INC.
16

17                    UNITED STATES DISTRICT COURT

18                   NORTHERN DISTRICT OF CALIFORNIA

19                         SAN FRANCISCO DIVISION

20 YODLEE, INC.                          C 05-01550 (SI)

21       Plaintiff,                      REVISED JOINT CLAIM
                                         CONSTRUCTION AND PREHEARING
22    v.                                 STATEMENT PURSUANT TO PATENT
                                         LOCAL RULE 4-3
23 CASHEDGE, INC.

24       Defendant.

25

26       Plaintiff Yodlee, Inc. ("Yodlee") and Defendant CashEdge, Inc. ("CashEdge"), by and

27 through their respective counsel, hereby respectfully submit the following revised and updated

28                                   1    REVISED JOINT CLAIM CONSTRUCTION AND PREHEARING
                                          STATEMENT PURSUANT TO PATENT LOCAL RULE 4-3
                                                                           C 05-01550 (SI)

NYA 774516.1

| Claim Language | Yodlee's Proposed Construction and Supporting Evidence | CashEdge's Proposed Construction and Supporting Evidence |
|---|---|---|
| | declaration from Dr. Yannis Papakonstantinou regarding this construction and CashEdge's proposed construction. Dr. Papakonstantinou's opinion will be based on the intrinsic and extrinsic evidence presented by the respective parties as well as his knowledge of the usage of the term in the relevant art at the time the patent was filed. | Dr. Kommu's opinion will be based on the intrinsic and extrinsic evidence presented by the respective parties as well as Dr. Kommu's knowledge of the usage of the term in the relevant art at the time the patent was filed. |
| Extracts data | Proposed Construction: Locate and retrieve data from a web site in a way that allows summarization and/or aggregation.<br><br>Dictionary/Treatise Definitions:<br>Extract:<br>"Draw or pull out, usually with some force or effort; also used in an abstract sense; "pull weeds"; "extract a bad tooth"; "take out a splinter"; "extract information from the telegram"."<br>(http://www.websters-online-dictionary.com/)<br><br>Intrinsic Evidence:<br>Patent at claim 1; see also Patent at 2:59-67; 9:54-14:2 patent figure 4<br><br>Extrinsic Evidence:<br>Yodlee may present testimony or a declaration from Dr. Yannis Papakonstantinou regarding this construction and CashEdge's proposed construction. Dr. Papakonstantinou's opinion will be based on the intrinsic and extrinsic evidence presented by the respective parties as well as his knowledge of the usage of the term in the relevant art at the time the patent was filed. | Proposed Construction: No need to construe. If construed, this phrase means to retrieve or pull out data.<br><br>Extrinsic Evidence: Extract ... To draw forth .... To pull out ..." Webster's Third New International Dictionary (2002).<br><br>CashEdge may present testimony or a declaration from Dr. Venkataramana Kommu regarding this construction and Yodlee's proposed construction. Dr. Kommu's opinion will be based on the intrinsic and extrinsic evidence presented by the respective parties as well as Dr. Kommu's knowledge of the usage of the term in the relevant art at the time the patent was filed. |

4. **United States Patent No. 6,633,910**

| Claim Language | Yodlee's Proposed Construction and Supporting Evidence | CashEdge's Proposed Construction and Supporting Evidence |
|---|---|---|
| Subscribers | Proposed Construction: | Proposed Construction: |

S

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PACESETTER, INC.,                )
ANGEION CORPORATION,             )
                                 )
          Plaintiff,             )
                                 )
     v.                          )   Civil Action No. 96-232-SLR
                                 )
CARDIAC PACEMAKERS, INC.,        )
                                 )
          Defendant.             )

MEMORANDUM ORDER

I.  INTRODUCTION

Plaintiff Pacesetter, Inc. ("Pacesetter") commenced this patent infringement action on May 3, 1996, against Cardiac Pacemakers, Inc. ("CPI"). Pacesetter alleged infringement by CPI of three Pacesetter patents relating to implantable cardiac pacemakers and defibrillators. On June 20, 1996, Pacesetter and co-plaintiff Angeion Corporation ("Angeion") filed an amended complaint, further asserting infringement of three separate patents relating to implantable cardiac defibrillators. It is alleged that CPI is making, using, offering to sell, and selling the patented inventions as embodied in CPI's VIGOR and VENTAK MINI series of products. CPI is selling and/or offering to sell these products in Delaware.

On July 19, 1996, defendant CPI filed a motion to transfer this suit to the District of Minnesota. (D.I. 14) For the reasons that follow, the motion will be granted.

II. BACKGROUND

Pacesetter is a Delaware corporation having its principal place of business in Sylmar, California. Pacesetter is a subsidiary of St. Jude, a Minnesota corporation headquartered in St. Paul, Minnesota. Plaintiff Angeion is a Minnesota corporation with its principal place of business in Plymouth, Minnesota.

CPI is a Minnesota corporation having its principal place of business in St. Paul, Minnesota. CPI is a wholly-owned subsidiary of Guidant Corporation which is headquartered in Indianapolis, Indiana.

It would appear that all of the parties conduct business on a nationwide basis.

III. ANALYSIS

Title 28 of the United States Code, section 1404(a) provides:

> For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interest of justice. Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). "The standard under which transfer applications are considered requires district courts to consider the convenience of parties and witnesses, the interest of

2

justice, and whether the action could have been brought in the suggested transferee court." SportsMEDIA Technology Corp. v. Upchurch, 839 F. Supp. 8, 10 (D. Del. 1993). The parties do not dispute that both Delaware and Minnesota are proper venues.

As this court has recognized on numerous occasions, "[a] plaintiff's choice of forum is a paramount consideration in any determination of a transfer request, and the court should not disturb the plaintiff's choice lightly." The Joint Stock Society v. Heublein, Inc., 1996 WL 471198 (D. Del. 1996) at 6. Therefore, "the burden is on the defendants to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971) (emphasis added)).

Defendant in this case has alleged in support of its transfer motion that "[m]ost of the key witnesses wh[o] can be expected to testify live more than one hundred miles from Wilmington, Delaware;" "[m]any are subject[, however,] to the subpoena power of the District of Minnesota. . . ." (D.I. 16 at 7-8) Defendant concedes that most of these witnesses are employees or ex-employees of the parties at suit (or related parties) and does not identify any specific witness who will not appear voluntarily. Instead, defendant argues generally that '[t]here is every reason to believe that no current or former employee of Angeion or St. Jude voluntarily will consent to

3

testify at trial in Delaware (or Minnesota) unless it suits the interest of Angeion or St. Jude." (D.I. 27 at 8) The court finds such general allegations singularly unpersuasive, given the experience of this court in such matters.

Defendant also proffers the familiar argument that, because of the location of witnesses and tangible evidence, Delaware is not the most convenient trial forum. As this court has observed on previous occasions, the discovery process will take place where the witnesses and evidence are located regardless of where the trial is held. Given the advent of technological advances which have substantially reduced the burden of having to litigate a case in a distant forum, see, e.g., Wesley-Jessen Corp. v. Pilkington Visioncare, Inc., 157 F.R.D. 215, 218 (D. Del. 1993), the convenience argument is compelling only in circumstances where the moving party truly is a local (versus a nationwide) concern. The court does not understand any of the parties to fit the former description. Therefore, this factor, when weighed against the economies related to the instant trial forum (a date certain within 21 months of filing a complex case), does not strongly favor defendant's request to transfer.

The court, however, is persuaded that transfer of this case to the District of Minnesota is warranted because of Minnesota's familiarity with the technology at issue through past and pending litigation. It is the court's understanding that the District of Minnesota is in a posture to accept such a complex

4

case without prejudice to plaintiffs' interest in a prompt resolution of the matter. Under these unusual circumstances, the court finds that transfer will conserve judicial resources and, therefore, further the interest of justice.

IV. CONCLUSION

For the reasons stated, at Wilmington this 25th of September, 1996,

IT IS ORDERED that defendant's motion to transfer (D.I. 14) is granted.

                                                United States District Judge